1  MCDERMOTT WILL & EMERY LLP
   WILLIAM G. GAEDE, III (136184)
2  wgaede@mwe.com
   Jason D. Strabo
3  275 Middlefield Road, Suite 100
   Menlo Park, CA 94025
4  Telephone:   (650) 815-7400
   Facsimile:    (650) 815-7401

5  *Attorneys for Isis Pharmaceuticals, Inc.*

6  MCDERMOTT WILL & EMERY LLP
   DEREK J. MEYER (278346)
7  dmeyer@mwe.com
   JASON D. STRABO (246426)
8  jstrabo@mwe.com
   2049 Century Park East, Suite 3800
9  Los Angeles CA  90067 3218
   Telephone:   (310) 277-4110
10 Facsimile:    (310) 277-4730

11 MCDERMOTT WILL & EMERY LLP
   JOHN C. LOW (*pro hac vice*)
12 jlow@mwe.com
   1000 Louisiana, Suite 3900
13 Houston, TX 77002
   Telephone:   (713) 653-1781
14 Facsimile:    (713) 739-7592

15 *Attorneys for Isis Pharmaceuticals, Inc.*

16 GIBSON, DUNN & CRUTCHER LLP
   FREDERICK BROWN (65316)
17 fbrown@gibsondunn.com
   MICHAEL SITZMAN (156667)
18 msitzman@gibsondunn.com
   TIMOTHY P. BEST (254409)
19 tbest@gibsondunn.com
   ASHLEY JOHNSON (*Pro Hac Vice*)
20 ajohnson@gibsondunn.com
   555 Mission Street, Suite 3000
21 San Francisco, CA  94105-2933
   Telephone:  (415) 393-8200
22 Facsimile:  (415) 393-8306

23 JOSH KREVITT (208552)
   jkrevitt@gibsondunn.com
24 JOSEPH EVALL (*Pro Hac Vice*)
   jevall@gibsondunn.com
25 200 Park Avenue
   New York, NY  10166-0193
26 Telephone:   212.351.4000
   Facsimile:    212.351.4035

27
   *Attorneys for Defendants Santaris*
28 *Pharma A/S Corp. and Santaris Pharma A/S*

1

2

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

3

4

5

6

7

8

9

10

11

ISIS PHARMACEUTICALS, INC., a
Delaware Corporation,

             Plaintiff,

   v.

SANTARIS PHARMA A/S CORP., a
Delaware corporation, and SANTARIS
PHARMA A/S, a Danish Corporation,

           Defendants.

AND RELATED COUNTERCLAIMS.

NO.  11-CV-2214 GPC (KSC)

**SUPPLEMENTAL JOINT MOTION FOR RESOLUTION OF DISPUTE WITH RESPECT TO DR. NICHOLAS M. DEAN'S ACCESS TO DOCUMENTS DESIGNATED BY SANTARIS AS "CONFIDENTIAL INFORMATION" UNDER PROTECTIVE ORDER FILED UNDER COURT'S ORDER OF MAY 17, 2013 [DKT 140]**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PUBLIC VERSION*

JOINT SUPPL. MOTION TO DETERMINE DISPUTE
re DR. NICHOLAS M. DEAN
CASE NO. 11-CV-2214 GPC (KSC)

Pursuant to this Court's Order of May 17, 2013 [Dkt. No. 140], Plaintiff Isis Pharmaceuticals, Inc. ("Isis") and Defendants Santaris Pharma A/S and Santaris Pharma A/S Corp. (collectively, "Santaris") hereby respectfully submit this supplemental joint motion seeking a resolution of their dispute with respect to whether Dr. Nicholas Dean, an expert witness proposed by Isis, can be afforded access to documents and information designated by Santaris as "Confidential Information."  The parties request that the Court take judicial notice of the initial Sealed Joint Motion For Resolution of Dispute With Respect to Expert Access to Documents Designated by Santaris as "Confidential Information" Under Protective Order filed at Dkt. No. 115, as well as all declarations and exhibits accompanying that Joint Motion at Dkt. Nos. 113 and 115.

## I.    INTRODUCTIONS

### A.    ISIS

Dr. Dean in good faith on May 22 provided the disclosures on his consulting as required by the Court in its May 17 Order following the March 4 Joint Motion. All of the information confirms Dr. Dean's independence to serve as an expert for Isis in this matter under the Ninth Circuit's *Brown Bag* decision and the relevant district court cases both parties cited to the Court in the first round of briefing.  The essential facts are not in dispute.

- Dr. Dean has not worked for Isis for seven years, owns no Isis stock, has no professional relationship with Isis nor a personal relationship other than to socialize occasionally with Isis's Frank Bennett.

- ██████████████████████████████████████████████ ████████████████████████

- Dr. Dean has agreed to the additional protections for Santaris that if he should come across confidential information on a target that somehow is implicated in his other consultancies, he will immediately cease all work on that target and will not read information on it beyond that — a protection not

required under the Protective Order or under the law but offered by Dr. Dean to further reduce any risk of disclosure. ███████████████████

████████████████████████████████████████████

███████████████████

- Santaris now disavows its earlier reliance on the Ninth Circuit's *Brown Bag* decision, effectively arguing that it's balancing requirements have been trumped by this Court's *sua sponte* May 17 Order that the parties should include Paragraph 8 of the standard Southern District of California model protective order provision on disclosing consultancies, and incorporate its definition of independence. But Isis has never understood that Order to be in conflict with binding Ninth Circuit law, but instead to be interpreted in a way that requires a balancing of the risk of inadvertent disclosure against need of the other party to disclose the information. *Brown Bag*, as interpreted by the *Santella* District Court, requires that Dr. Dean be a competitive decision maker. Those cases do not hold that he is automatically disqualified by the mere fact that he consults for a competitor (which is incorrect). Santaris is using overly broad definitions of competition and reading the Amended Protective Order divorced from Ninth Circuit law to prevent Isis from using an industry expert to address Santaris's acts of infringement.

- Meanwhile, Santaris has no qualms about disclosing its confidential information to industry competitors to serve as its experts when it suits Santaris's purposes. Santaris argues that the issue is inadvertent disclosure and that it is acting "reasonably" under the Amended Protective Order. ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████



- Further, Santaris's claims of competition are stretched.

will not share documents with Dr. Dean that involve the ███████████ employed by those clients, if any exist.[1]

- Santaris concedes that Dr. Dean will abide by the Protective Order and will not knowingly violate its provisions. *See Presidio Components v. American Technical Ceramics* cited in the Court's May 17 Order (finding protective order prohibited express disclosure and provided a suitable remedy.)  One of those provisions, a Prosecution Bar, prohibits Dr. Dean from actively prosecuting on disclosed subject matter (rendering moot the issue of any pending legacy patent applications and the <u>assigned</u> applications he filed when at Excaliard).

- The prejudice to Isis is great.  (i) It is difficult to locate individuals steeped in the field of antisense drug discovery at issue in this case because such work is performed by companies, as Santaris's own choice of experts show:  Not one is an academic.  (ii) Isis has already made significant investments in Dr. Dean's consultancy in this case while having to meet and defeat Santaris's premature summary judgment motion.  (iii) Barring Dr. Dean confidential access provides Santaris with an unfair advantage:  Santaris can select industry experts from competitors (███████████) to whom it will disclose its confidential information and from whom it will proffer expert testimony, yet prohibit Isis from presenting expert testimony from its industry experts to Judge and Jury.  Santaris should not be permitted to so use the shield of the Amended Protective Order as a weapon.

---

[1]  Santaris faults Dr. Dean heavily for not permitting it's counsel to disclose to Santaris the name of the companies Dr. Dean disclosed.  But the information does not belong to Dr. Dean:  *It belongs to his clients.*  His conduct further confirms the high regard he holds his receipt of anyone's confidential information.  Moreover, at the May 6 hearing, this Court stated to Santaris's counsel that it would have to have a "pretty darn good reason" for the information to be disclosed to Santaris.  Given Santaris and its counsel's sweeping view of competition and the Amended Protective Order, it has never advanced that pretty darn good reason and in view of its failures to do so, its arguments faulting Dr. Dean have no basis.

Isis met and conferred with Santaris on May 30, and sent a draft Joint Motion the next day asking to file this Motion on shortened time.   Santaris's counsel failed at that time to identify any specifics articulated in this motion.   Knowing that Isis needs Dr. Dean to oppose Santaris's renewed Motion for Summary Judgment to be filed on June 24, on the evening of June 6 Santaris — for  the first time — raised a number of  supposed specifics to buttress its objection to Dr. Dean being approved under  the  Protective  Order.    Santaris's  delay,  and  its  lack  of  transparency, ultimately cannot conceal the lack of merit to its positions.   Time is short, as Santaris will file its motion for summary judgment on June 24.   Isis respectfully asks for expedited consideration of this motion.

### B.   SANTARIS

There are two grounds under the Amended Protective Order to deny Isis's motion  to  overrule  Santaris's  objection  to  Dr.  Dean  seeing  Santaris's  most confidential scientific and business information.   First, Dr. Nicholas Dean is not an "Independent Expert," as that term is defined in the Amended Protective Order. Instead, he actively consults for companies that are *competitors* of Santaris. Dr. Dean began two of those competitive consulting arrangements in 2013 at the same time  he  was  seeking  access  to  Santaris's  most  confidential  information,  fully understanding the risk that those new arrangements may disqualify him from seeing Santaris's attorney's eyes only information.   Second, Santaris's objection to Dr. Dean's  seeing  its  most  secret  and  valuable  information  is  reasonable,  and  the Amended Protective Order provides the parties with that reasonable discretion.   The scope of Dr. Dean's active consulting business, his longstanding ties with Isis, and the likelihood that Dr. Dean will consult in the future for other directly competitive clients all confirm that Santaris's objection is, at a minimum, reasonable.   Isis recognized that each party is permitted to exercise reasonable discretion under the Protective Order when it objected to ████████, Santaris's expert, preventing ████ from seeing highly confidential information produced by Isis.

1

2 ███████ Contrary to Isis's new and artificial

3 view of competition, siRNA and RNAi are antisense technologies that compete

4 with the technology of Santaris.  Isis's May 22, 2013 letter impliedly admits that

5 fact ████████

6 ████ Declaration of Ashley E. Johnson ("Johnson Decl.") Exh. A.

7 ████████

8 ███████ This is precisely what Santaris does.

9 Most, like Santaris, are competing for contracts with pharmaceutical companies to

10 develop drug candidates.  The competition is clear to Santaris's counsel, even

11 though it has been denied the opportunity to discuss even the names of the entities

12 with Santaris because Dr. Dean refuses to allow such minimal disclosure to

13 Santaris. ████████

14 ███████ Those provisions, however, have never

15 been shared with Santaris or this Court, and the claimed strictness of those

16 provisions is belied by the fact that some of the engagements have been publicly

17 disclosed by his own clients.  And while Dr. Dean has to date never quoted from

18 those agreements, ████████

19 ███████ That

20 suggestion, as discussed below, is definitively wrong as to two of his clients, and

21 likely exaggerated as to the others—but regardless, counsel has not been given the

22 information that it would need to test the remaining assertions.

23 ████████

24 ████████

25 ████████

26 ████████

27 _____

2 ████████

28



13       Even beyond Dr. Dean's current engagements with Santaris's competitors, and his overzealous assertions about their confidentiality, Santaris has numerous reasons to reasonably object to disclosure of its most sensitive confidential information to Dr. Dean.  Despite previously declaring that he did not have a "direct business or social relationship with Isis" [Dkt. 113-17], Isis now admits that Dr. Dean has a social relationship with Dr. Frank Bennett, the Senior Vice President of Research at Isis, who is responsible for antisense drug discovery and antisense technology research at Isis, and with whom Dr. Dean has collaborated on 18 antisense patents.  Johnson Decl. Exhs. C & D.  Indeed, that relationship is beyond social—since his departure from Isis, Dr. Dean and Dr. Bennett have applied for at least four antisense patents, assigning two of them to be jointly owned by Isis and Excaliard and reserving two others for themselves.  Johnson Decl. Exhs. E & F.

       Also, Dr. Dean worked for Isis for 15 years and collaborated with Isis for another six in a related company (Excaliard) that Isis and its principals created.  It was only after this litigation was commenced that Dr. Dean and Isis sold their

interests in Excaliard to Pfizer (with whom Santaris has a collaboration agreement at issue in this case) for millions of dollars, an arrangement that very likely will continue to benefit Dr. Dean and Isis through earn out payments or in other ways. Based on these and other facts, it is not unreasonable for Santaris to withhold its approval of Dr. Dean to view Santaris's most highly confidential information.

Isis's claimed prejudice is greatly exaggerated. Santaris's objection does not block Isis from using Dr. Dean as an expert. It only blocks Isis from sharing with him Santaris's attorney's eyes only information that Isis's other two experts—Drs. Gordon and Gellman—are permitted to review. Isis's other straw man prejudice argument is also wrong—Santaris is not signaling that it will object to every expert who consults for a competitor. Instead, Santaris will judge each proposed expert on the facts presented and will exercise its judgment reasonably. If Isis truly needs yet a third expert to view Santaris's highly confidential information, there are many potential experts available to assist it who would not draw an objection from Santaris. If Isis has suffered any prejudice at all, Isis should discuss that claim with Dr. Dean, who in 2013 accepted as clients two competitors of Santaris as his personal clients, thus confirming yet further that he is not an independent expert.[3]

## II.    ISIS ARGUMENT

### A.    DR. DEAN IS INDEPENDENT UNDER THE NINTH CIRCUIT'S *BROWN BAG* DECISION AND DISTRICT COURT AUTHORITY ON INDEPENDENCE OF EXPERTS

#### 1.    Dr. Dean is Independent of Isis

As Santaris acknowledges (*infra*, 26:9-12, 30:12-20), the issue is inadvertence and whether there is an unacceptable risk of disclosure, drawing on

---

[3] Isis's claim of lack of transparency by Santaris's counsel in meet and confer exchanges is not only factually incorrect, it does not assist the Court in resolving the substance of the dispute between Isis and Santaris. It is sufficient to say that if Dr. Dean had allowed counsel to confer with Santaris about the names of the companies that Dr. Dean consults for, counsel's investigation would have been easier and gone more quickly. If the Court, however, wants counsel to respond in more detail, counsel can do so quickly.

the Ninth Circuit decision in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992). There the Court held that a proffered in-house counsel must be a competitive decision maker for confidential access to be denied. *Id.* at 1470. The "party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *Santella v. Grizzly Industries, Inc.*, No. 3:12-mc-00131-SI, 2012 U.S. Dist. LEXIS 158349, at *4 (D. Or. Nov. 5, 2012) (internal quotations omitted) (applying *Brown Bag* in the expert context). Certainly, the Court's Amended Protective Order harmonizes with the controlling Ninth Circuit balancing of standard enunciated in *Brown Bag*. It does not, as Santaris asserts, counter it[4] by setting a standard that effectively any consultant who arguably works for a competitor is disqualified. (*Infra*, 32:2-8.)

There is no question here that Dr. Dean is independent of Isis. He has not worked at Isis for seven years, owns no stock in Isis, has no professional relationship with Isis, is not a competitive decision maker of Isis, and only occasionally socializes with a former colleague at Isis. (Gaede Decl., ¶ 24, Ex. 16, ¶ 8; *id.* ¶ 33, Ex. 24, ¶¶ 2-3.) ██████████████████████

████████████████████████████████████████████

████████████████ While Santaris argued that it reasonably believed that Dr. Dean was too closely associated with Isis in the original Joint Motion, the facts then and additional facts provided do not in any way support that conclusion. Santaris points to patent applications filed contemporaneous with Dr. Dean's tenure at Excaliard (*infra*, 33:3-10), but Excaliard no longer exists; the applications were assigned; and Dr. Dean is subject to the Protective Order's Prosecution Bar,

---

[4] The Court should note Santaris's shifting view on which precedent controls. In the opening Joint Motion and at its appearance before the Court on May 6, Santaris relied heavily on *Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 364081 (C.D. Cal. Feb. 6, 1997). *See* Discovery Hearing Transcript ("Disc. Hr. Tr.") 30:2-16, May 6, 2013(Santaris Counsel: "The *Beam* case supports us"). Santaris now expressly disavows that authority. (*Infra*, 32:2-8.) Santaris also faults Dr. Dean for disclosing that he occasionally socializes with Dr. Bennett as if that constitutes directly socializing with Isis.

providing ample protection to Santaris.  (Gaede Decl., ¶ 24, Ex. 16, p 3; *id.* ¶ 33, Ex. 24, ¶ 6.)

Moreover, Santaris agrees that the *Brown Bag* analysis weighs any risks of inadvertent disclosure against the safeguards imposed to guard against it.  960 F.2d at 1470; *see* 26:26-27:2, *infra*.  Here, Isis and Dr. Dean have voluntarily agreed to limit disclosures to Dr. Dean in order to address concerns raised by Santaris in this and prior briefing.   *First*, Dr. Dean will immediately cease reviewing Santaris confidential documents if, during the preparation of his opinions in this case, he comes across information about a gene target that one of his current clients is also pursuing.  (Gaede Decl., ¶ 24, Ex. 16, ¶ 20.)  *Second*, █████████████████████████████████████████████████████████████████████████████████ *Third*, Dr. Dean will treat confidential Santaris information with the same due care and regard reserved for the confidential information of his own clients.  (Gaede Decl., ¶ 24, Ex. 16, ¶¶ 12-13.)  Indeed, that he has scrupulously observed his obligations to his current clients by refusing to permit Santaris counsel from sharing his recent disclosures with top Santaris executives shows, contrary to Santaris's assertions (*infra*, 30:16-22), the very judgment he will employ to protect Santaris information.

### 2. Dr. Dean's Consultancies Do Not Compete With Santaris Nor Involve Competitive Decision Making as Required Under *Brown Bag*

Santaris now argues that Dr. Dean currently helps its competitors "monetize" RNA drug discovery just like Santaris is trying to do, and so Dr. Dean cannot be trusted to maintain the confidentiality of sensitive Santaris information.   But Santaris applies the wrong standard.  The issue before the Court is not competition

in the abstract but is, as Santaris has stated, one of whether there is an unacceptable risk of inadvertent disclosure.[5]

In that regard the cases are clear:  Even if Dr. Dean's consulting clients were true "competitors" of Santaris (a point Isis disputes), "[a] competitive relationship alone, however, is not sufficient to find that [a proposed expert] will inadvertently disclose [the producing party's] confidential information."  *Santella*, 2012 U.S. Dist. LEXIS at *16 (applying *Brown Bag*); *Brown Bag*, 960 F.2d at 1470.  The proposed expert must also "be in a position to effectuate or direct decisions made using knowledge that is tainted by . . . confidential information."  *Santella*, 2012 U.S. Dist. LEXIS at *16-17.  In other words, Dr. Dean must act as a competitive decision-maker for the Court to deny him access to Santaris confidential information.  He does not, and Santaris asserts no compelling reason to find otherwise.

In response to the Court's May 17 Order [Dkt. No. 140], ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████   ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[5] *See* Joint Motion [Dkt. No. 115] at 39:28-40:3 ("But Santaris's concern is not that Dr. Dean will *intentionally* violate his obligations.  Its concern is that disclosure of Santaris's confidential information to Dr. Dean presents a common sense risk of inadvertent disclosure or misuse.")

[6] ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████  Santaris's argument fails on

3 this critical second prong of the *Brown Bag* analysis.

4      ████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 Specifically:

9    • ██████████████████████████████████████████

10    ████████████████████████████████████████████

11    ████████████████████████████████████████████

12    ████████████████████████████████████████████

13    ████████████████████████████████████████████

14    ████████████████████████████████████████████

15    ████████████████████████████████████████████

16    ████████████████████████████████

17    • ██████████████████████████████████████████

18    ███████████████████████████████████████  ██

19    ████████████████████████████████████████████

20    ████████████████████████████████████████████

21    ████████████████████████████████████████████

22    ████████████████████████████████████████████

23    ████████████████████████████████████████████

24    █████████████████████████████████████

25    • ██████████████████████████████████████████

26    ████████████████████████████████████████████

27    ████████████████████████████████████████████

28    ████████████████████████████████████████████

1

2

3

4

5  •

6

7

8

9

10

11

12

13

14

15

16

17



18    Santaris's in-house and trial counsel take a broad, subjective view of

19 competition.  They assert that companies in Santaris's competitive space include

20 those using many different technologies, such as siRNA, RNAi, and

21

22

_____

23 [7]

24

25

26    "The LNA Drug Platform and Drug Discovery Engine developed by Santaris
Pharma A/S combines the Company's proprietary LNA chemistry . . . to rapidly

27 deliver potent single-stranded LNA-based drug candidates for a range of diseases
including *metabolic disorders, infectious and inflammatory diseases, cancer and*

28 *rare genetic disorders*."  (Gaede Decl., ¶ 14, Ex. 8.)

oligonucleotides that are not at issue in this case.[9]   (*Infra*, 23:15-24:4, 35:3-20.) Effectively, Santaris wrongly contends that any expert currently working in the broad field of "RNA therapeutics" is inappropriate to serve as an expert in a legal proceeding if that expert requires access to the defendant's confidential information.   That result hobbles patent holders before Judge and Jury where the defendant can present such an expert, but the patent holder may not.

**3.**                                                      **to be Unreasonable**

The unreasonableness of Santaris's objection to Dr. Dean shows in its choice of ███████████████████████████████████████████████████████ as one of two experts with whom Santaris proposes to share Isis confidential information.[10]

_____

[9]   Santaris makes much of an Isis webpage explaining different "Antisense Approaches — Mechanisms and Targets."   (*Infra*, 22:10-15; *see* Gaede Decl., ¶ 15, Ex. 9.)   However, the issue is not how many different molecular mechanisms of gene inhibition Isis categorizes under the "antisense" descriptor.   The issue is the scope of information reasonably likely to be shared with Dr. Dean during this case. That information is limited by the claims and defenses in-suit to gapped oligonucleotides of the kind claimed in Isis's asserted patents, as well as microRNAs employed by Santaris during performance of some of the accused contracts.   Neither type of molecule are "RNAi" or "siRNA."

[10]   Best Email to Isis Counsel dated March 12, 2013 (██████████████████ under the Protective Order), Gaede Decl., ¶ 16, Ex. 10; Dis█████████████antaris Counsel Fred Brown at the May 6 hearing: "It's most likely we are only going to use Dr. Brown and Dr. [Ohlstein].")



Santaris has engaged and provided its confidential information to its expert, ▮▮▮▮▮▮, who does not qualify under *Brown Bag / Santella*, *Symantec* (*infra*), nor the Amended Protective Order.  Its act of turning a blind eye to the inadvertence risk this poses when it suits its litigation purpose highlights the unreasonable and tactical nature of its objection.  Neither *Brown Bag / Santella* nor the Amended Protective Order countenance this unbalanced result.

## B.   THE PREJUDICE TO ISIS IS MATERIAL

As discussed at the May 6 hearing, material prejudice will befall Isis if Dr. Dean cannot opine on scientific evidence presented in Santaris confidential documents. ███████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████ This is particularly so given that only two drug products have been approved by the FDA during the more than 20 year history of the antisense industry.

████████████████████████████████████████████████████████ ██████████████████████████████ ███████████████████ ██████████████████████ (*Id.,* ¶ 20, Ex. 13.)  Dr. Dean would provide the Court with another view drawn from his 30 years of drug discovery and development experience.  (*Id.* at ¶ 24, Ex. 16, ¶¶ 8, 10.)

Where certain Santaris activities fall on the continuum between drug discovery and drug development will amount to a key issue in the Court's resolution of whether Santaris may claim absolute exemption from infringement under Section 271(e)(1).  *See* Dkt No. 53 at 6:23-24 (Judge Moskowitz finds that "[t]he Safe Harbor does not apply, however, where a biological compound is used to perform 'basic scientific research' or as a 'research tool'").  The loss of Dr. Dean would leave Isis without an antisense industry expert[11] permitted access to Santaris drug discovery documents needed to address this point.  The claims and issues in dispute require an expert with antisense industry experience, and yet no expert can satisfy Santaris's sweeping definition of a "competitor" because any viable expert will consult for or have some tie to companies in the industry — even academics — as that is the very essence of an "industry expert" in a case where industry drug discovery is at issue.

---

[11]  Isis's two other experts cleared under the Protective Order — Dr. Elizabeth Gordon (FDA regulation) and Dr. Claire Gelfman (basic opthalmology) — have altogether different expertise than Dr. Dean and play a different role for Isis.

Finally, Isis has invested substantially in Dr. Dean, including by his drafting and submitting a 25 page declaration in opposition to Santaris's early and flawed summary judgment motion.  (Gaede Decl., ¶ 25.)  Santaris argues that Isis has long had notice of Santaris's objection to Dr. Dean and assumed any risk (*infra*, 33:14-34:21).  But the simple fact is that Isis invested in Dr. Dean well before Santaris's first objection to him in November 2012 when it opposed Santaris's ill-conceived early summary judgment motion filed January 30, 2012.  Having caused this investment prejudice, Santaris should not now be heard to minimize it.

Santaris's prior assertion that a search on Westlaw for antisense or oligonucleotide yields over 500 "results" is highly misleading.  (*See* 33:19-28, *infra*.)  A high proportion of those results are simply duplicate references to the same purported experts, with numerous experts listed multiple times, including many that are listed 10 or more times.  Of the actual unique experts contained within that list, the overwhelming majority appear to have been included by virtue of their publication of just one or two passing articles regarding a single experiment or series of experiments utilizing antisense oligonucleotides.  Many of those articles are extremely dated, and thus do not reflect current expertise necessary to evaluate Santaris's Safe Harbor affirmative defense that depends highly on the capabilities of the field as of today.  The remainder either lacked sufficient practical experience or appear to have relationships with "competitors" that would be deemed disqualifying under the standards urged by Santaris.

### C.    SANTARIS RELIES ON QUESTIONABLE AUTHORITY

Attempting to lead the Court to error, Santaris relies on *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2012 WL 3582974 (Aug. 20, 2012 N.D. Cal.).  The court there denied confidential access to a proposed expert who actively consulted with competitors of the producing party.  *Id.* at *3.  The decision, however, did not apply the Ninth Circuit's balancing approach set out in *Brown*

*Bag*, but instead applied a far more stringent standard requiring that the proffered expert "possess unique expertise" before permitting him confidential access. *Id.*

This Court should decline to follow the nonbinding *Symantec* decision. First, the facts there limit its reach to "the very specific situation presented by" its proposed expert, namely, someone who actively consults with true competitors of the producing party. *Id.* at *12. Such is not the case with Dr. Dean. (*See* 12:5-13:17, *supra.*) Moreover, the *Symantec* court found that the proffered expert lacked unique expertise. 2012 WL 3582974 at *11. Yet Dr. Dean possesses uncommon knowledge of an antisense industry with which few individuals have actual discovery and development experience. (*See* 16:2-13, 17:9-21, *supra.*)

Second, *Symantec* relies upon authority holding that an expert without an on-going relationship with a competitor may access confidential information. *Verigy US, Inc. v. Mayder*, No. C07-04330 RMW (HRL), 2008 U.S. Dist. LEXIS 111116, at *3-4 (Sept. 8, 2008); *Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, No. C-95-20169 RMW (EAI), 1996 U.S. Dist. LEXIS 21459, at *10 (Oct. 28, 1996). Each court noted that the sanctioned expert had signed the governing Protective Order (*ibid.*), and in *Advanced Semiconductor* the producing party "must look to the Protective Order and to the laws of theft of trade secrets for its protection." *Id.* at *10-11. The same is true here.

Finally, *Symantec* was wrongly decided. By its analysis, the very credentials that qualify someone as an expert in the patented subject matter (*Symantec*, 2012 WL 3582974 at *2) become "on-going relationships with competitors in the field" of the producing party. *Id.* at *3. Those relationships are then disqualifying unless the expert has "unique expertise." If a field has even two suitable experts, then parties will be *per se* unable to use their chosen expert. Surely that cannot be the law, and is contrary to *Brown Bag's* balancing requirement. Moreover, with all due respect to the *Symantec* Court, the decision appears unreliable as it states that it

1   could find no case within the Ninth Circuit on the issue.  *Id.* at \*11 n.1.  *Symantec*

2   plainly did not consider *Brown Bag* nor *Santella*.

3   **III.   SANTARIS ARGUMENT**

4           Although the disclosure of information designated "Confidential – For

5   Outside Counsel Only" is explicitly governed by Paragraph 8 of the parties'

6   Protective Order, Isis does not so much as quote that language in meet and confer

7   communications or in the draft of its motion, instead relying exclusively on its

8   mistaken understanding of case law.  Paragraph 8 does not mention "competitive

9   decision maker[s]," or permit disclosure to any expert who agrees not to

10   "knowingly violate its provisions."  Jt. Mot. at 4.  Nor does Paragraph 8 provide

11   that disclosure of highly confidential material will be governed by *Brown Bag*

12   *Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992).  Instead, the Amended

13   Protective Order, which was signed 20 years after *Brown Bag* was decided and

14   adopts a different standard, expressly provides two limitations on permissible

15   disclosures to experts.  *First*, she must be an "Independent Expert," defined in the

16   Order as one who "is not anticipated to become an employee of, or a non-litigation

17   consultant of a party or competitor of a party."  Amended Protective Order, ¶ 8.[12]

18   *Second*, even if she is an "Independent Expert," the disclosing party may still

19   withhold approval so long as approval is not "unreasonably withheld."  *Id.*[13]  Dr.

20   Dean is not an "Independent Expert," and Santaris's decision to withhold its

21   approval is not unreasonable.  Accordingly, Isis's request should be denied on

22   either or both grounds.

23

24

25

26   _____

27   [12] The definition of "Independent Expert" was adopted verbatim from the Court's
     Model Protective Order, ¶ 5.

28   [13] The approval condition was adopted verbatim from the Court's Model Protective
     Order, ¶ 12.

### A.   DR. DEAN IS NOT AN "INDEPENDENT EXPERT" UNDER PARAGRAPH EIGHT OF THE AMENDED PROTECTIVE ORDER

Under the Amended Protective Order, the term "Independent Expert" is defined as "a person with specialized knowledge or experience in a matter pertinent to the case who has been retained by Counsel to serve as an expert witness or as a litigation consultant in this case, and who is not a current employee of a party or of a competitor of a party and who, at the time of retention, is not anticipated to become an employee of, or a non-litigation consultant of a party or competitor of a party."   Dr. Dean is not an Independent Expert, because he is a non-litigation consultant for Santaris's competitors.  Because Confidential Information may *only* be disclosed to Independent Experts, he is thus ineligible to receive disclosures of such information under the Order.

After withholding for several months any meaningful information about his consulting relationships, Dr. Dean very recently disclosed several consulting engagements, most of which are, in counsel's view, directly competitive with Santaris. As an initial matter, it is critical to note that Santaris's ability to evaluate those engagements and address the prejudice to it in detail is hampered by Dr. Dean's  refusal to allow counsel to share even the *names* of the competitors with Santaris.[14]   Yet he seeks access to the identity of the Santaris's targets, and much much more—though the target identity alone is extremely valuable.  As Dr. Bojko of Santaris explains, (a) the choices of which among the many thousands of potential specific RNA molecules to target are among Santaris's most closely guarded trade and scientific secrets; (b) disclosing merely the identity of the

---

[14]  In an effort to minimize the scope of disclosure, Santaris repeatedly made clear that it requested only to disclose the names of the entities, and also emphasized that, if Isis would be more comfortable with disclosure to fewer or different people at Santaris, Santaris was open to considering Isis's proposal on that issue.  Johnson Decl. Exhs. G & H.  Isis made no such proposal, instead categorically refusing to permit Santaris to have client input on the disclosure of its most confidential information to an expert who actively consults with its competitors.

targets—even without any disclosing any other technical details—conveys valuable and competitive information about Santaris's commercial and therapeutic strategy; (c) this information informs competitors of the most worthwhile ventures, but also informs them of the ventures perhaps not worth pursuing; and (d) even where a target may be disclosed in the later stages of development, there is still much information that is enormously valuable that is not disclosed, for example such as the potential binding sites on any individual target RNA molecule for which one may design an antisense oligonucleotide to bind, or the methods and assays used to design an optimal antisense oligonucleotide.   It is ironic that Dr. Dean is unwilling to disclose just seven names to Santaris, yet Isis deems it unreasonable for Santaris to object to Dr. Dean having unfettered access to a veritable mountain of Santaris's most confidential information, including its laboratory notebooks, joint planning documents, documents disclosing its proprietary scientific know how and trade secrets, business plans, scientific plans, targets, and forecasts, and many other categories of documents.

In any event, it would be unusual for all ███ consulting engagements to be as restrictive as Dr. Dean suggests and to bar even the name of the client from being disclosed. And in fact, it appears that the confidentiality demands of these engagements have been exaggerated. ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██ ██ ██ ███ ██ ███ █ ███ █ ██ ██

███████████████████████████

1 ████████████████████████████████████ ██████████

2 ████████████████████████████████████████████

3 ███████████████████████████████ 16

4 ██████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████

8    Further, counsel's conclusion that the entities disclosed by Dr. Dean compete

9 with Santaris is supported by at least the following:

10    *First*, ████████████████████████████████████

11 ██████████████████████   As Isis discloses on its website, antisense

12 technology includes RNase H activation, RNAi, siRNA, microRNA and alternative

13 splicing.  Johnson Decl. Exh. K.  ████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████ 17

19    *Second,* ████████████████████████████████

20 ████████████████████████████████████████████

21 ─────────────────────
15

22 ████████████████████████████████████████████

23 ██████████████████████████████████

24 █████████████████████████████████████████████

25 ██████████████████████████████████████████████

17

26 █████████████████████████████████████████████

27 █████████████████████████████████████████████

28 █████████████████████████



But in order to avoid the conclusion that Dr. Dean is consulting for competing companies, Isis tries to redefine "competition" today as companies that work on the same therapeutic target. Isis's new definition of "competition" is both artificial and inaccurate, and was far more restrictive than the definition of competition used by Isis when it opposed Santaris's motion for summary judgment. In any case, so long as Santaris's judgment on which companies are competitors is reasonable, the Protective Order allows Santaris to make that judgment. Here, not only is Santaris's judgment reasonable, but the companies for which Dr. Dean consults are in fact, competitors of Santaris.

or view itself, as having technology

1  that will produce results only in specified therapeutic areas. ██████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ██████

5  *Third*, ████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ██████████████████████████████████████████

9  *Fourth*, ██████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 █████████████████████████████  ██████████████████

13 ██████████████████████  █████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████  ███████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ██████████████████████████████████████████

25 *Fifth*, ████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████████████  ████████████████████████



*Sixth,*

*Seventh,*

\* \* \*

For all of these reasons, Dr. Dean is not an Independent Expert as defined in the Amended Protective Order.

**B.    SANTARIS'S OBJECTION TO DISCLOSURE OF ITS MOST SENSITIVE INFORMATION TO DR. DEAN IS REASONABLE AND THUS PERMITTED UNDER THE PROTECTIVE ORDER.**

The analysis as to whether Dr. Dean is an "Independent Expert," is not the end of the inquiry.  Instead, the Protective Order specifically requires that "[t]he approval of *Independent Experts* must not be unreasonably withheld."  Para. 8 (emphasis added).  The Protective Order thus unambiguously contemplates that some experts, *even though they are independent*, can be the subject of a reasonable objection.  Thus, even if Dr. Dean were independent, which he is not, Santaris would still be able to object if the grounds are reasonable.  As revealed in the prior

1    section, Santaris has more than a reasonable basis to object to Dr. Dean.  Still there

2    are additional grounds that show the reasonableness of Santaris's objection.

3            **1.**     **The Case Law Recognizes Multiple Considerations That Weigh Against Permitting Disclosure to Dr. Dean and Justify Santaris's Objection**

4

5          Isis portrays the Ninth Circuit's *Brown Bag* decision as "requir[ing] that the

6    individual be a competitive decision maker to warrant lack of access," and asserts

7    that Dr. Dean is not a "competitive decision maker."  Jt. Mot. at 8-11.  Both

8    arguments are wrong.

9          While one factor in considering the degree to which inadvertent disclosure is

10   a risk is the degree to which the recipient is a "competitive decision maker," *Brown*

11   *Bag* was clear that the inquiry is a broader one into all facts and circumstances.  *See*

12   *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).  In

13   *Brown Bag*, the client's outside counsel withdrew late in the case and the client

14   hired in-house counsel to appear on its behalf instead.  *Id*. at 1469.  The question for

15   the Court was whether "attorneys' eyes only" material could be now shown to that

16   in-house counsel.  Far from holding that this question could be resolved on the

17   basis of whether the in-house counsel was a "competitive decision maker," the

18   Court concluded that the "conflicting interests" at issue in such disputes – the

19   receiving party's right to review discoverable evidence, and the producing party's

20   right to be protected from misuse of its documents by competitors – "suggest that a

21   balancing test will best resolve protective order disputes such as the one here."

22   *Brown Bag*, 960 F.2d at 1470.  The court thus stated that, at least in one particular

23   case considering disclosure to counsel, "a" – not "the" – "crucial factor . . . was

24   whether in-house counsel was involved in 'competitive decisionmaking'; that is,

25   advising on decisions about pricing or design 'made in light of similar or

26   corresponding information about a competitor.'" *Id*.  The court further held that

27   "proper review of protective orders in cases such as this requires the district court to

28

-26-

*examine factually all the risks and safeguards* surrounding inadvertent disclosure by any counsel." *Id.* (emphasis added).

Despite claiming that *Brown Bag* "requires that Dr. Dean be a competitive decision maker," Isis cannot disagree that *Brown Bag* requires this analysis of all the facts and circumstances, rather than imposing categorical requirements, and indeed Isis describes *Brown Bag* as adopting a "balancing approach."  Jt. Mot. at 17.  Yet Isis suggests that Santaris has somehow "disavow[ed]" *Brown Bag* by applying precisely this approach. *Id.* at 9.  In fact, Santaris agrees that, because Dr. Dean fails the *Brown Bag* balancing test, Santaris plainly cannot have acted unreasonably in refusing to permit disclosure of its most sensitive and confidential information to him.  However, the Amended Protective Order – which was signed twenty years after *Brown Bag* – provides *additional* protections, beyond the balancing guaranteed by *Brown Bag*; specifically, it precludes disclosures to "independent experts," which Dr. Dean does not qualify as, and guarantees that Santaris may object to *any* expert so long as that objection is not unreasonable. *Brown Bag* simply holds that, even without these provisions, the courts must still engage in a balancing approach to determine whether a disclosure to a proposed person is appropriate.

As set forth in the initial joint motion, disclosure to Dr. Dean presents precisely the risk of inadvertent disclosure that counsels in favor of serious caution. *See In re Deutsche Bank Trust Company Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.").

1

2

3        In *Symantec Corp. v. Acronis Corp.*, 2012 U.S. Dist. LEXIS 117350 (N.D.

4   Cal. Aug. 20, 2012), the Northern District of California respected a litigant's

5   objections to the disclosure of its confidential information under a protective order

6   to a consultant who "actively consults" in the area at issue in the litigation.  *Id*. at

7   *8.  Isis attempts to distinguish *Symantec* or urges this Court to ignore it.  Jt. Mot.

8   at 17-18.  But Isis does not dispute the truth of the statement that *Symantec* makes

9   that is most relevant here:  "Neither the parties nor the Court on its own have been

10  able to identify a case within the Ninth Circuit where a party's objections to an

11  expert were overruled where that expert actively consulted in the very field at

12  issue."   *Symantec*, 2012 U.S. Dist. LEXIS 117350, at *10 n.1.   Although Isis

13  exaggerates the extent to which Dr. Dean has "uncommon knowledge" (*see infra* at

14  18), the critical point is that *Symantec* recognizes, and Isis is unable to dispute, that

15  disregarding a litigant's objection to an expert who, like Dr. Dean, "actively

16  consult[s] in the very field at issue," is unprecedented.

17       Moreover, as set forth above, Dr. Dean's clients are perceived by Santaris's

18  counsel as competitors.   *See supra* at 23.   Given that the Protective Order

19  recognizes that experts who actively consult with competitors may be ineligible for

20  disclosure of the most confidential information, Santaris's reasonable perception of

21  Dr. Dean's clients as competitors should be more than sufficient to give Santaris a

22  reasonable basis to object.  Similarly, Dr. Dean does not represent that he will not

23  take on additional competitor clients in the future, and in fact, two of his current

24  competitor clients were recruited by Dr. Dean in 2013, at a time when he was

25  seeking to gain Santaris's most secret information.

26       Even a narrow focus on whether Dr. Dean actually participates in

27  competitive decision making likewise confirms the reasonableness of Santaris's

28  objection.  The court in *Brown Bag* specifically explained that the issue is whether

"in-house counsel was involved in 'competitive decision making,'" not whether the individual actually made the decisions. *Brown Bag*, 960 F.2d at 1470. That makes good sense; the concern is whether in-house counsel is in a position where knowledge of the competitor's information might be inadvertently misused. Whether that happens because the party that reviewed the confidential information itself makes a competitive decision based on that information, or because the party reviewing the confidential information is influenced by it in rendering advice to the actual decision maker, is logically irrelevant. In either case, the producing party risks prejudice from inadvertent misuse of its confidential information.

Isis claims that *Santella v. Grizzly Industries* replaces the "factor" of whether the party seeking access is involved in competitive decision making with a *requirement* that the party seeking access *be* the decision maker. Jt. Mot. at 11. But its claim is simply inconsistent with *Santella*, which specifically followed *Brown Bag* in noting that "a crucial factor in evaluating the risk of inadvertent disclosure is whether the person seeking access *was involved in* competitive decision-making; that is, *advising on decisions about pricing or design* made in light of similar or corresponding information about a competitor." *Santella*, 2012 U.S. Dist. LEXIS at *12 (quoting *Brown Bag*, 960 F.2d at 1470) (first emphasis added; internal quotation marks omitted).[18] The court then concluded that the party seeking access in that case was merely "in contact with competitive decision-makers," and that the "type of information at issue . . . [wa]s not amenable to inadvertent disclosure" anyway. *Id.* at *19.

Dr. Dean is in a position to provide significant influence directly on the competitive decision making of his clients. Companies hire Dr. Dean specifically

---

[18] Although *Santella* speaks in terms of whether the party seeking access "is a 'competitive decision-maker'" – apparently the way the issue was framed the parties – it unambiguously holds that a "competitive decision-maker" is one who "advis[es] on decisions about pricing or design made in light of similar or corresponding information about a competitor." *Santella*, 2012 U.S. Dist. LEXIS at *14 (alteration in original; internal quotation marks omitted).

so that, with respect to scientific matters, he can "advis[e] on business decisions," the very definition of a person who is "involved in 'competitive decision-making.'" *Markey v. Verimatrix, Inc.*, 2009 WL 1971605, at *3 (S.D. Cal. July 8, 2009).  Dr. Dean has significant scientific expertise, ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ Plainly, companies place him in these roles so that he may advise them with respect to their scientific decisions—the precise decisions where Santaris's confidential information would be most relevant.

It is worth noting that despite Isis's continued implications that Santaris is suggesting that Dr. Dean "cannot be trusted," that is neither Santaris's position nor the required standard under the law.  Jt. Mot. at 10.[19]  Nor is the question whether there is a sufficient risk of inadvertent disclosure to outweigh Isis's interest in using the expert of its choice.  Santaris needs to show only that it is acting reasonably in concluding that Dr. Dean *may* inadvertently disclose its confidential information *or* that the confidential information will become so intertwined with his other knowledge such that it will be disclosed, inadvertently or otherwise, in the course of his work.  Dr. Dean's involvement in providing scientific advice for competitive companies, and the difficulty of erasing target and sequence information, once learned, is sufficient to justify Santaris's decision.

███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[19]   Isis overstates that Dr. Dean "has acted scrupulously before this Court on the confidentiality he owes to all his clients," given that he has represented to the Court that his very retentions are confidential, when in fact some of them have been publicly disclosed.  *See* Johnson Decl. Exh. B.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25        **2.     Santaris Has Reasonable Concern about Dr. Dean's Close
26             and Longstanding Relationship with Isis**

27        Dr. Dean's relationship with Isis is of such long tenure, and so substantial,

28   that Santaris cannot have acted unreasonably in objecting to disclosure because of

1   it.  Isis attempts to combine this inquiry with that of independence, and suggests a

2   variety of tests "to assess whether an expert is independent from the party."  Of

3   course, with respect to whether Dr. Dean is an "Independent Expert," the inquiry is

4   set forth in the Amended Protective Order, and the tests that apply when the

5   protective order *lacks* a definition are irrelevant.  *See, e.g., Beam Sys., Inc. v.*

6   *Checkpoint Sys., Inc.*, 1997 WL 364081, at *4 (C.D. Cal. Feb. 6, 1997)) (reducing

7   the inquiry into "independence" into whether the party seeking access was

8   independent of a party).[20]

9       Santaris's argument about Dr. Dean's close relationship with Isis extends

10  beyond the concept of "independence" as that concept is used in the case law,

11  although it is related to it.  Dr. Dean worked at Isis for 15 years, is the co-inventor

12  on 43 antisense patents assigned to Isis between 1997 and 2012, and even after

13  leaving Isis worked very closely with Isis through Excaliard, which had an

14  extensive and lucrative collaboration with Isis.  But for Isis's support over the years

15  with technology and investment in Excaliard, Dr. Dean would likely not have made

16  the many millions he was paid on the sale of Excaliard in 2012 to Pfizer.  It is

17  worth noting that Isis too was enriched by many millions in that sale, and both Isis

18  and Dr. Dean likely will be paid yet more by Pfizer in earn out or related

19  compensation if their drug is successful.  Although Isis previously said that there

20  was "no evidence of ongoing social relationships with people at Isis," it now

21  acknowledges that Dr. Dean does have such a social relationship with Dr. Frank

---

[20] Isis claims that Santaris has a "shifting view" of precedent because it both argues that *Beam* supports it and acknowledges that *Beam* contained a protective order with a narrower conception of independence than the parties' current protective order.  Jt. Mot. at 9 n.4.  But Isis misunderstands Santaris's argument.  *Beam* supports Santaris's view that Dr. Dean is not independent of Isis because of his "close, profitable, and longstanding business relationship" with Isis.  *Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 364081, at *5 (C.D. Cal. Feb. 6, 1997).  *Beam* also demonstrates that case law regarding "independence" cannot be applied to this case without being cognizant of the fact that the Amended Protective Order specifically defines the term "independent expert" more broadly than many of the cases by focusing on the parties' competitors, not just the parties themselves.

Bennett, Isis's Senior Vice President of Research responsible antisense drug discovery and antisense technology research.  Johnson Decl. Exh. C.

After he left Isis, Dr. Dean continued to collaborate with Isis and its personnel in filing new patent applications on antisense technology.  Dr. Dean did so while he was at Excaliard, notwithstanding the fact that Isis now claims there was no relationship between Isis and Excaliard or Isis and Dr. Dean.  Not true. Several of the patent applications that Dr. Dean filed after he left Isis were assigned jointly to Isis and Excaliard.  *See* Johnson Decl. Exhs. S & T.  And two others were not assigned at all, they are jointly held by Dr. Dean and several Isis employees, including Dr. Bennett.  *Id.* at Exhs. E & F.  Dr. Dean's continued relationship and collaboration work with Isis's top management highlights why Santaris's objection is reasonable.  Moreover, it sharply distinguishes Dr. Dean from ███████████

███████████████████████████████████

### 3.    There Is No Substantial Prejudice To Isis

Although Isis claims that it will be prejudiced from not being able to disclose Santaris's most sensitive confidential information to Dr. Dean, that prejudice is unsubstantiated and, to the extent it exists, is a product of Isis's own decisions or those of Dr. Dean.

*First*, Isis's position that it could not find another expert continues to be unsupported.  Santaris has consistently noted that standard expert databases contain a significant number of experts in the fields of antisense and oligonucleotide technology.  Johnson Decl. Exh. U.  And there are other organizations such as IBC Life Sciences and GTCbio through which experts in antisense can be found.  *See, e.g.*, Johnson Decl. Exhs. V-Y.  Isis has never offered the name of any other expert it considered, or any information, even at a general level, regarding its purportedly futile search.  Nor has Isis ever proposed to Santaris an alternative to Dr. Dean, so Isis's imagination about what Santaris might do if and when Isis proposes a substitute for Dr. Dean are untested and unsupported speculation.

*Second*, Santaris has allowed Isis's other two experts—Drs. Gordon and Gelfman—to view Santaris's highly confidential information. To the extent that Isis truly needs yet a third expert to see that same information, Santaris is open to considering a nominee on the particular facts presented by her.

*Third*, to the extent that Isis has invested time in Dr. Dean, that too is Isis's own choice. Santaris objected to the disclosure of confidential information to Dr. Dean over 6 months ago, on November 6, 2012. To the extent that Isis has continued to invest in Dr. Dean, it has done so with the knowledge that Santaris has serious concerns about disclosure of Santaris materials to him. That strategic decision should not now assist Isis in arguing that Santaris's objection to Dr. Dean is unreasonable.

*Fourth*, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*Fifth*, Santaris's objection is limited to the disclosure of confidential Santaris materials to Dr. Dean. Santaris is not blocking Isis's use of Dr. Dean as an expert. Again, Isis's decision not to use him in that capacity to review non-confidential documents or Isis's own documents is one of its own making.

## C.   SANTARIS WOULD BE PREJUDICED BY PERMITTING ISIS'S PROPOSED DISCLOSURE TO DR. DEAN

Finally, Santaris would experience substantial prejudice if Isis were permitted to disclose its confidential information to Dr. Dean. Santaris produced millions of pages of highly competitive, confidential material under the Protective Order with the understanding that the documents would be shielded from those individuals who were not independent from Isis and as to whom Santaris could

object so long as it was reasonable.  The rules should not be changed at this point in the litigation.

Inadvertent disclosure of Santaris's most confidential information would inflict serious harm on Santaris.  Santaris's choices of which of the thousands of potential specific RNA molecules to target are among its most closely guarded trade and scientific secrets.   Bojko Decl. ¶ 8.   Santaris's Senior Director of Intellectual Property, Maja Bojko, explains that "disclosing merely the identity of the targets—even without disclosing any other technical details—conveys valuable and competitive information about Santaris's commercial and therapeutic strategy." *Id*.  When competitors become aware of the results of Santaris's experiments, those competitors learn both of promising targets and unpromising paths not worth pursuing.  *Id*.  Given that Dr. Dean has "ongoing relationships with competitors in the field," there is a "tangible risk" that he "will not be able to separate the highly confidential information he gleans from reviewing" Santaris's documents, such as this target information, from "his consulting and publication work" in the same field.  *Symantec Corp.*, 2012 WL 3582974, at *3.  Even beyond the disclosure of target information or where the targets are publicly known, the specific "potential binding sites on any individual target RNA molecule for which one may design an antisense oligonucleotide to bind, or the methods and assays used to design an optimal antisense oligonucleotide is also competitively valuable information."  *Id*. Given that Dr. Dean has "ongoing relationships with competitors in the field," there is a "tangible risk" that he "will not be able to separate the highly confidential information he gleans from reviewing" Santaris's documents, from "his consulting and publication work" in the same field.  *Symantec Corp.*, 2012 WL 3582974, at *3.

While Santaris respects Isis's right, under the Amended

Protective Order, to object to such disclosures so long as it was not unreasonable, Santaris's motion for summary judgment is due in a matter of weeks and Santaris has been foreclosed from sharing "outside counsel only" information ███████ ████. That is what the Amended Protective Order provides and that is what right Isis has exercised – the same right that Santaris has exercised with regard to Dr. Dean.  And even if Isis were to withdraw or was required to withdraw its objection to ███████ if Dr. Dean is permitted to view Santaris's confidential information, Isis's objection to ████████ has ensured that Santaris has insufficient time to have ████████ review Isis's documents in time to include his views on that information in the summary judgment motion to be filed on June 24.

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

DATED:   June 10, 2013      By:      */s/ William G. Gaede, III*
William G. Gaede, III

Attorneys for *Isis Pharmaceuticals, Inc.*

**GIBSON, DUNN & CRUTCHER LLP**

DATED:   June 10, 2013      By:      */s/ Frederick Brown*

Attorneys for *Santaris Pharma A/S Corp.*
*and Santaris Pharma A/S*

**SIGNATURE ATTESTATION**

I hereby attest that concurrence has been obtained from   Ashley   Johnson   – on   behalf   of   Frederick   Brown,   counsel   for   Santaris   Pharma   A/S   and   Santaris Pharma A/S Corp, as indicated by a "conformed" signature (/s/) within this e-filed document.

*/s/ William G. Gaede, III*
William G. Gaede, III