13 JUL -5 PM 1:17

[U.S. DISTRICT COURT]
[SOUTHERN DIST. OF CALIFORNIA]

DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIS PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SANTARIS PHARMA A/S CORP. et al., <br><br> Defendant. | CASE NO. 11cv2214-GPC (KSC) <br><br> **ORDER DETERMINING DISCOVERY DISPUTE RE: DEFENDANTS' FIRST SET OF INTERROGATORIES: NOS. 1, 4, 7** <br><br> [Doc. Nos. 145, 161] |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute [Doc. No. 145 (unsealed), Doc. No. 161 (sealed)] regarding plaintiff's responses to defendants' First Set of Interrogatories. Specifically, defendants contend that plaintiff failed to provide adequate responses to Interrogatory Nos. 1, 4, and 7, and seek an order from the Court compelling plaintiff to provide additional responses. For the reasons outlined below, defendants' request for additional responses from plaintiff is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

On September 22, 2011, plaintiff Isis Pharmaceuticals ("Isis" or "plaintiff") filed a Complaint [Doc. No. 1] alleging that defendants Santaris Pharma A/S Corp. and Santaris Pharma A/S (collectively, "Santaris" or "defendants") have infringed upon two of plaintiff's patents. The two patents at issue in this litigation involve a form of

biotechnology called antisense molecules. Antisense molecules are generally used to interrupt the overproduction or abnormal production of certain proteins that can cause disease. On January 30, 2012, defendants filed a Motion for Summary Judgment arguing that their allegedly infringing activities were protected by the "Safe Harbor" provision of 35 U.S.C. § 271(e)(1). [Doc. No. 17] On July 26, 2012, the Court entered a Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings in a Patent Case. [Doc. No. 42] The case progressed until September 2012, when the normal flow of discovery was interrupted by an intervening Court Order.

Specifically, on September 18, 2012, Judge Moskowitz issued an Order Denying Defendants' January 30, 2012 Motion for Summary Judgment ("MSJ") without prejudice [Doc. No. 53], finding that (1) defendants *could* fall within the Safe Harbor but that it is a fact-intensive inquiry and more substantial fact discovery was required; and, (2) the Safe Harbor issue could potentially dispense of the entire case. Judge Moskowitz established a 120-day period of limited discovery related solely to defendants' Safe Harbor defense, and gave defendants leave to re-file their MSJ (on the issue of Safe Harbor only) within 30 days of the close of this limited discovery period. [Doc. No. 53] The following day, Judge Moskowitz issued an Order staying discovery related to everything except defendants' Safe Harbor defense, allowing only Safe Harbor related discovery to occur during the 120-day period. [Doc. No. 54] The 120-day period of limited discovery contemplated by the Judge Moskowitz was September 18, 2012 to January 16, 2013. Further, the original 30-day leave granted for defendants to re-file their Safe Harbor MSJ expired on February 15, 2013.

This matter was transferred from District Judge Moskowitz to District Judge Curiel on October 12, 2012. [Doc. No. 57] On November 30, 2012, plaintiff filed an *ex parte* Motion [Doc. No. 62] asking the Court to vacate the remaining period of limited discovery so that discovery on all issues could re-commence, and to extend the filing deadline for defendants' renewed MSJ on the Safe Harbor issue. Plaintiff

claimed that, contrary to the representations made to Judge Moskowitz, discovery on the Safe Harbor issue was not narrow or isolated from the other issues and was much more complicated and fact-intensive than represented. On December 10, 2012, defendants filed an Opposition [Doc. No. 67], explaining that the Safe Harbor issue was more discrete than represented by plaintiff and that defendants' voluminous (and reluctant) discovery production (exceeding the scope of Safe Harbor) was at plaintiff's request and stemmed from defendants' desire to avoid future costly discovery disputes. Accordingly, defendants requested a hearing before Magistrate Judge Crawford to address plaintiff's requests.

On January 15, 2013, the Court held a Discovery Hearing to address the issues raised. [Doc. No. 101] Specifically, the Court heard oral argument regarding the deadline for filing a renewed MSJ on the Safe Harbor issue and the appropriate scope of discovery leading up to said filing. On January 31, 2013, based on the arguments presented at the January 15, 2013 Discovery Hearing, the Court ordered, *inter alia*, "The current discovery stay limiting discovery to the Safe Harbor issue *only* (35 U.S.C. § 271(e)(1)) will remain in place until **April 5, 2013**. Parties are not authorized to engage in discovery related to any other areas, including 35 U.S.C. § 271(a), before April 5, 2013. No discovery encompassing a broader range of issues is to commence absent further order of Court." [Doc. No. 94, p. 2 (emphasis in original)]

On March 8, 2013, the parties submitted a Joint Motion for Resolution of Dispute [Doc. No. 113] concerning plaintiff's proposed testifying expert, Dr. Nicholas M. Dean. Defendants notified the Court that this pending dispute was impacting their ability to file their renewed MSJ on the Safe Harbor issue. Accordingly, on April 26, 2013, District Judge Curiel set a telephonic status hearing for May 3, 2013 "to discuss an appropriate hearing date and briefing schedule for [d]efendants' renewed summary judgment motion." [Doc. No. 131, p. 2] As a result of the May 3, 2013 telephonic hearing, Judge Curiel amended the filing deadline and briefing schedule for defendants' renewed MSJ. [Doc. No. 132]

On May 6, 2013, a Discovery Hearing was held [Doc. No. 134] before Magistrate Judge Crawford to hear argument regarding the parties' dispute over plaintiff's expert, Dr. Dean. After considering the arguments, on May 17, 2013, the Court ordered plaintiff to disclose certain information about Dr. Dean's consulting practice and further instructed the parties to timely contact the Court if they remained unable to resolve their conflict after the required information was disclosed. [Doc. No. 140] After the production by plaintiff of the required information, defendants' objections remained and, on June 10, 2013, the parties filed a Supplemental Joint Motion for Resolution of Dispute over Dr. Dean. [Doc. No. 149 (unsealed), Doc. No. 162 (sealed)] In addition, on June 7, 2013, the parties filed the instant Joint Motion for Determination of Discovery Dispute [Doc. No. 145 (unsealed), Doc. No. 161 (sealed)] regarding plaintiff's responses to defendants' First Set of Interrogatories. The parties again notified the Court that these pending discovery disputes were impacting their ability to proceed with the renewed MSJ. [Doc. No. 155, Joint Motion seeking expedited review of discovery disputes]

## II. DISCUSSION

The scope of discovery under Rule 26(b) is broad: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party involved in the pending action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b). However, a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of responding to the proposed discovery outweighs the likely benefit. The party resisting discovery generally bears the burden of showing that the discovery requested is irrelevant to the issues in the case or is overly broad, unduly burdensome, unreasonable, or oppressive. If the resisting party meets its burden,

1  the burden shifts to the moving party to show the information is relevant and
2  necessary. *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (2010).

### A. Defendants' First Set of Interrogatories

Defendants contend that plaintiff failed to provide adequate responses to Interrogatory Nos. 1, 4, and 7. For the reasons articulated below, the Court finds plaintiff is not required to supplement its responses to Interrogatory No. 1, but must provide additional responses to Interrogatory Nos. 4 and 7.

#### 1. Interrogatory No. 1

Interrogatory No. 1 asked plaintiff to identify and describe all of defendants' allegedly infringing acts, including the identification of the country where those acts occurred. [Doc. No. 161, p. 6] The description was to include the date, geographic location, and a statement labeling the infringing act as a sale, offer to sell, use, or importation. *Id.* Plaintiff objected to this interrogatory, arguing this request seeks information outside the scope of the Safe Harbor provision and potentially seeks information protected from disclosure by the attorney work product doctrine. *Id.* at 6-7. Subject to these objections, plaintiff responded by referring defendants to the description of events contained in plaintiff's Complaint and Preliminary Infringement Contentions. *Id.* In a supplemental response, plaintiff stated that one or more of these acts occurred in the United States, citing specific, Bates-numbered contracts as examples of unauthorized "sales" and, as an example of unauthorized "use," that defendants, "at a minimum," performed patented methods at the Seattle, Washington facility of one of defendants' partners. *Id.* at 8-9.

Plaintiff contends that "these infringing offers for sale and resulting sales occurred 'in the United States,' as evidenced by at least (i) the terms of the various contracts, (ii) the physical location of the personnel and entities involved in the business negotiations in the Untied States, (iii) the physical location of [defendants'] contract negotiations over a period of time in the United States, and (iv) the physical location of the resulting performance of the contracting parties . . .

pursuant to commercial sales embodied in the contracts and their associated amendments, modifications, and addenda." *Id.* at 9-10. As support for these contentions, plaintiff lists hundreds of Bates-numbered documents. *Id.* at 10-25. To the extent "place of performance" is relevant, plaintiff contends that the thousands of pages of details cited provide defendants with the information sought. *Id.* at 31.

Defendants argue that plaintiff should be compelled to provide further responses as to specific geographic locations because a "significant fact related to 'use' is where the allegedly infringing compounds, methods, and processes were used." *Id.* at 25. Defendants contend that the plain language of the Safe Harbor provision itself exempts acts only "within the United States." *Id.* Further, defendants argue that plaintiff's own actions, i.e. asking defendants and witnesses in discovery requests and depositions to identify "where" certain work was performed, demonstrate the geographical relevance. *Id.* Defendants state that plaintiff has only revealed the exact geographic location of one alleged act of infringement and asks the Court to compel plaintiff to do so with regard to all alleged acts. For the reasons set forth below, the Court **DENIES** defendants' request to compel plaintiff to provide additional responses to Interrogatory No. 1.

Since opening a period of limited discovery on the Safe Harbor issue and staying discovery on all other issues, the Court has repeatedly made clear its intention of keeping discovery limited solely to the issues raised by 35 U.S.C. § 271(e)(1), not 271(a), pending resolution of defendants' renewed summary judgment motion on the Safe Harbor issue.[1] The parties' dispute over the specific

---

[1] Section 271(a) states in pertinent part,"Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention, during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Section 271(e)(1) (the Safe Harbor Provision), a provision contained "within the same title," states in pertinent part, "It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . solely for uses reasonably related to the development and

1  geographical information sought in defendants' Interrogatory No. 1 is not essential
2  for defendants to prepare their renewed Safe Harbor MSJ. Plaintiff asserts in its
3  Complaint that defendants committed infringing acts under Section 271(a) within
4  the United States, and responded to Interrogatory No. 1 with pages of documents
5  "identif[ying] . . . contract documents showing where the place of performance
6  occurred . . ." [Doc. No. 162, p. 32] The Safe Harbor is an affirmative defense that
7  only excuses otherwise infringing activities that occurred in the United States. To
8  avail themselves of this defense, defendants must implicitly admit that they "ma[d]e,
9  use[d], offer[ed] to sell, or so[ld]" one of plaintiff's patented compounds or methods
10 within the United States. 35 U.S.C. § 271(e)(1). Otherwise, there would be no
11 conduct to be excused by the affirmative defense. While a Section 271(a)
12 infringement claim requires a *prima facie* showing that an infringing act occurred in
13 the United States, the assertion of the Safe Harbor defense assumes that the conduct
14 at issue occurred in the United States, but focuses on whether an otherwise unlawful
15 or infringing use of plaintiff's patented technology falls within 271(e)(1)'s Safe
16 Harbor, namely whether the use is "reasonably related to the development and
17 submission of information under a Federal law which regulates the manufacture,
18 use, or sale" of a drug. Accordingly, defendants' request seeking a Court order
19 compelling plaintiff to provide supplemental responses to Interrogatory No. 1 is
20 **DENIED.**

21              **2.     Interrogatory No. 4**
22 Interrogatory No. 4 asked plaintiff to identify and describe all positions
23 advanced by or on behalf of plaintiff, or an entity related to plaintiff, regarding the
24 scope or application of the Safe Harbor provision as it relates to the '199 Patent
25 (one of the two patents at issue in this litigation). [Doc. No. 161, p. 33-34] The
26 description was to identify all communications with entities other than plaintiff or

---

28 submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products." 35 U.S.C. § 271(e)(1).

defendants where any party asserted that the activities alleged to come within the scope of the '199 Patent fell under the Safe Harbor provision. *Id.* Plaintiff objected to this interrogatory, arguing the request was vague, overbroad, duplicative, and sought information protected from disclosure by the attorney-client privilege and work product doctrine. *Id.* at 34. Subject to these objections, and pursuant to Federal Rule of Civil Procedure 33(d), plaintiff responded by referring defendants to numerous, already-produced Bates-numbered documents based on the results yielded from the following mutually-agreeable search terms: "Safe Harbor", "271(e)(1)", and "271e1". *Id.* at 34-45. In a supplemental response, plaintiff directed defendants to numerous additional papers filed in this litigation, including the declarations of Dr. Nicholas Dean and Dr. Elizabeth Gordon. *Id.* at 45.

In a further supplemental response, plaintiff explained the extent of its involvement in two legal actions of interest to defendants, namely the 2012 *Alnylam*[2] case and the 2001-2002 *Sequitur*[3] litigation. Regarding *Alnylam*, plaintiff states that it was not the lead party in the litigation, the case was filed in January 2012 and dismissed in November 2012, and that plaintiff did not correspond directly with Tekmira regarding the Safe Harbor provision. *Id.* at 46. Thus, plaintiff is unaware of the existence of any non-privileged communications on the topic, and claims that all other responsive documents are either publically available or already in defendants' possession. *Id.* With respect to the *Sequitur* cases, plaintiff claims it conducted extensive investigations regarding any correspondence within the 2000-2001 time frame with Oasis, Hybridon, Genta, and other entities involved in the litigation and did not find any additional responsive, non-privileged information. *Id.*

Defendants argue that further responses should be compelled because the

---

[2] *Alnylam et al. v. Tekmira*, 12cv10087 (D. Mass. 2012).

[3] *Isis v. Sequitur, Inc.*, 01cv1223, 01cv2286, 02cv842 (C.D. Cal. 2001, 2002).

communications sought are relevant to the Safe Harbor issue. *Id.* at 47. Defendants claim plaintiff has a history of aggressively enforcing its patents; thus, what plaintiff has said and done in other cases involving the '199 Patent and the Safe Harbor provision is relevant to this action because it may undermine or contradict plaintiff's current contentions. *Id.* Specifically, defendants believe plaintiff sent cease-and-desist letters to Oasis, Hybridon, Genta, and other entities involved in the *Sequitur* cases. *Id.* at 48. These letters have not been produced. Furthermore, defendants are not satisfied with plaintiff's application of the 3 search terms to the electronically stored information, arguing that a key document[4] was not produced and many documents that were produced were irrelevant to this action. Accordingly, defendants seek a Court order compelling plaintiff to conduct a thorough search for such communications not limited by plaintiff's 2001-2001 time frame. *Id.* Further, defendants seek assurances that no additional responsive documents exist. *Id.*

Plaintiff argues it already provided detailed responses, that it has now twice conducted "substantial" investigations at great time and expense regarding communications in the *Sequitur* cases, that the communications, if any, are now over 11 years old, and that defendants' demand for additional responses rests solely upon defense counsel's speculation that such communications exist. *Id.* at 48-49. Furthermore, plaintiff contends that defendants have already deposed 5 witnesses on the topic and there is nothing left to discover. *Id.* at 49. According to plaintiff, "[I]t is not that [plaintiff] has not complied; it is that Santaris does not like the answer." *Id.*

Based on the arguments presented in the Joint Motion, the Court **GRANTS**

---

[4] They key item cited by defendants which was not initially produced by plaintiff in this case is a document written by plaintiff's CEO, Dr. Stanley Crooke, where Dr. Crooke alluded to defendants' activities being protected by the Safe Harbor provision. [Doc. No. 161, p. 47] Defendants argue that the absence of this document from plaintiff's initial production both undercuts plaintiff's position in this lawsuit and casts doubt upon the completeness of plaintiff's discovery responses in this litigation.

Case 3:11-cv-02214-GPC-KSC   Document 171   Filed 07/05/13   Page 10 of 14

defendants' request to compel plaintiff to provide additional responses to Interrogatory No. 4. Interrogatory No. 4 contains no language limiting its request to the 2000-2001 time period. Accordingly, plaintiff's unilateral imposition of a temporal limitation on defendants' request was improper. Thus, to the extent responsive, non-privileged information exists from the time period of 2000 to present, it should be produced. Accordingly, **within 30 days** of issuance of this Order, plaintiff must conduct a thorough search and produce any non-privileged communications regarding the scope or application of the Safe Harbor provision as it relates to the '199 Patent. Also **within 30 days** of issuance of this Order, plaintiff must provide defendants with a certification in a sworn discovery response that the production represents the entire universe of responsive documents in plaintiff's custody. Specifically, plaintiff's representative must provide defendants with a written declaration under penalty of perjury detailing their efforts to locate the sought-after items and stating that "to the best of [his or her] knowledge, information, and belief formed after a reasonable inquiry," the responses to these requests are "complete and correct." FED.R.CIV.P. 26(g)(1)(A).

### 3.    Interrogatory No. 7

Interrogatory No. 7 asked plaintiff to identify and describe each Investigational New Drug Application ("IND") and New Drug Application ("NDA") for an antisense oligonucleotide drug candidate submitted to the FDA by plaintiff or by one of plaintiff's "third party pharmaceutical partners" pursuant to "an agreement with [plaintiff]." [Doc. No. 161, p. 49] The description was to include the identities of plaintiff's employees most knowledgeable about the submissions of the INDs or NDAs, as well as communications with the FDA regarding the same. *Id.* Furthermore, the Interrogatory sought a statement as to "whether the IND or NDA contained any discussions or reports of in vitro tests of an antisense oligonucleotide and the purpose of any such tests." *Id.*

Plaintiff objected to this Interrogatory, claiming it seeks information outside

the scope the Safe Harbor provision, is vague, overbroad, and that the burden of ascertaining the answer to all parts of the request will be substantially the same for either party based on the documents already produced by plaintiff in this litigation. *Id.* at 49-50. Subject to these objections, plaintiff responded by referring defendants to certain Bates-numbered documents already produced, pursuant to Federal Rule of Civil Procedure 33(d). *Id.* In a supplemental response, plaintiff identified additional, already-produced documents, "which are the INDs and communications thereon that [plaintiff] has produced in this action," and cited that defendants have already deposed the two Isis employees identified as signing these INDs. *Id.* In addition, plaintiff described the two NDAs in its possession, custody, or control, namely antisense drug compounds marketed under the brand names Vitravene and Kynamro. *Id.* at 50-51. Vitravene, the lone NDA filed by plaintiff since its inception, was approved by the FDA in 1998. *Id.* at 50. Kynamro was developed by plaintiff's partner, Genzyme, and was approved by the FDA in 2012. *Id.* at 51. Plaintiff identified former Isis employee Mark Lotz as being the employee most knowledgeable about the Vitravene NDA, and, to the extent plaintiff was consulted by Genzyme regarding the Kynamro NDA, the Isis employees most directly involved are Joseph Johnston and Dr. Brandt. *Id.*

Defendants argue that the information sought in this Interrogatory is directly relevant to the Safe Harbor issue because these "INDs and NDAs provide examples of the type information that [plaintiff] or others believe may be provided to the FDA, and thus sheds light on whether [defendants'] allegedly infringing activities include research that 'if successful, would be appropriate to include in a submission to the FDA.'" *Id.* at 52, citing *Merck KgaA v. Integra LifeSciences I, Ltd.*, 545 U.S. 193, 207 (2005). To that end, defendants seek a Court order compelling plaintiff to produce the NDAs and to provide additional, sworn statements in formal discovery responses regarding the completeness of the production of INDs and NDAs.

Regarding the INDs, it appears any substantive dispute has already been

resolved. However, defendants seek an unequivocal and binding statement from plaintiff (in a sworn discovery response, not in a discovery motion) that it has produced to defendants all of the INDs in plaintiff's possession, custody, or control. *Id.* at 52. Under Rule 26(g)(1)(A), defendants are entitled to such a certification.[5] Plaintiff appears willing to give such formal assurances. With respect to the NDAs, defendants seek an order compelling plaintiff to produce the Vitravene and Kynamro NDAs, as well as any other NDAs similarly linked to plaintiff, or, if none, a statement in a sworn discovery response unambiguously confirming such. *Id.* at 52-53. Plaintiff contends that further response is not necessary, as it has already identified the 2 NDAs in its possession or control, that such documents are publically available, that defendants' request for production of the NDAs was untimely under the Chamber Rules of Magistrate Judge Crawford, and that the portion of defendants' request requiring plaintiff to "describe" the documents is vague and unduly burdensome, as each document totals over 175,000 pages. *Id.* at 53-55. Notwithstanding, plaintiff concedes its willingness to produce the NDAs. *Id.* at 54-55 (representing to the Court: "[H]ad [defendants] actually requested the two NDAs, [plaintiff] would also have produced the two NDA documents (each exceeding 175,000 pages) in its possession, custody, or control.") For the reasons set forth below, the Court **GRANTS** defendants' request to compel plaintiff to provide additional responses to Interrogatory No. 7.

Based on the arguments presented in the Joint Motion, the content contained within the INDs and NDAs seems reasonably likely to lead to the discovery of information relevant to the Safe Harbor issue. Further, the disputes over the INDAs and NDAs appear to be a matter of form, not substance. As to the INDs, defendants

---

[5] Under Rule 26(g)(1)(A), discovery responses must be accompanied by a certification "after a reasonable inquiry" indicating that the disclosure is "complete and correct as of the time it is made. . . ." While plaintiff provided substantially similar assurances in the parties' jointly submitted Discovery Motion, this is not a binding discovery response, and thus, is insufficient to satisfy the certification required under Rule 26.

seek a sworn statement in a discovery response that plaintiff's current production is complete – a statement plaintiff is willing to give. Regarding the NDAs, defendants are no longer demanding that plaintiff "describe" the voluminous NDAs; rather, the most recent demand contained in defendants' portion of the Joint Motion seeks plaintiff's production of the 2 NDAs, and, any other NDAs similarly linked to plaintiff in plaintiff's control, or, if none, a sworn statement unambiguously confirming such. *Id*. at 53, lines 11-13. Setting aside any arguments regarding the timeliness of defendants' request[6], plaintiff appears willing to produce the 2 NDAs, and, in the Joint Motion, represents that there are no other responsive NDAs in its possession or control. *Id*. at 54-55.

Good cause appearing, and because plaintiff represents that it is willing to produce the Vitravene and Kynamro NDAs and provide the assurances defendants desire, plaintiff is **ORDERED** to provide additional responses to Interrogatory No. 7. Accordingly, **within 10 days** of issuance of this Order, plaintiff must (1) produce the Vitravene and Kynamro NDAs; and, (2) provide a Rule 26(g)(1)(A) certification that the production of INDs and NDAs in this case represents the entire universe of responsive documents in plaintiff's custody. Specifically, plaintiff's representative

---

[6] It is unclear to the Court whether defendants' request for production of the NDA was timely. Plaintiffs argue that defendants never specifically requested the production of the NDAs. In contrast to defendants specifically requesting and engaging in meet and conferrals about the INDs, defendants allegedly did not make similar inquiries regarding the NDAs. Rather, according to plaintiff, the "only clear request for information regarding [plaintiff's] two NDAs" was in defendants' last set of interrogatories, served via email on March 6, 2013. [Doc. No. 161, p. 55] According to plaintiff and based on the FRCP, plaintiff's response to this March 6 request was due on April 8, 2013, after the April 5, 2013 discovery cut-off established in this Court's Scheduling Order. *Id*.

Conversely, defendants contend that production of the NDAs was responsive to a prior, timely interrogatory served in March 2013 and that May 30, 2013 was the first time plaintiff had even identified these NDAs. Given that the parties have asked the Court to decide this (and another) discovery dispute on an expedited basis in anticipation of filing a deadline-impacted renewed Safe Harbor MSJ [Doc. No. 155], as well as defendants willingness to produce the requested items, the Court will assume that the objection was timely filed and refrain from analyzing the timeliness of defendants' request.

must provide defendants with a written declaration under penalty of perjury detailing their efforts to locate the sought-after items and stating that "to the best of [his or her] knowledge, information, and belief formed after a reasonable inquiry," the responses to these requests are "complete and correct." FED.R.CIV.P. 26(g)(1)(A). However, the portion of the request seeking a description of the lengthy NDAs is unduly burdensome, and thus, it is **DENIED**. With the production of the NDAs themselves, the Court concludes that this information is equally accessible to both parties.

### III.  CONCLUSION

For the reasons stated above, plaintiff is not required to supplement its responses to Interrogatory No. 1, but must provide additional responses to Interrogatory Nos. 4 and 7. Accordingly, **IT IS HEREBY ORDERED THAT**:

1. **Interrogatory No. 4**: **Within 30 days** of issuance of this Order, plaintiff must (1) conduct a thorough search and produce any responsive, non-privileged communications from the time period of 2000 to present regarding the scope or application of the Safe Harbor provision as it relates to the '199 Patent, and (2) provide a Rule 26(g)(1)(A) certification that the production represents the entire universe of responsive documents in plaintiff's custody or control.

2. **Interrogatory No. 7**: **Within 10 days** of issuance of this Order, plaintiff must (1) produce the Vitravene and Kynamro NDAs; and, (2) provide a Rule 26(g)(1)(A) certification that the production of INDs and NDAs represents the entire universe of responsive documents in plaintiff's custody or control.

**IT IS SO ORDERED**.

Date: July 5, 2013

KAREN S. CRAWFORD
United States Magistrate Judge