MCDERMOTT WILL & EMERY LLP
WILLIAM G. GAEDE, III (136184)
wgaede@mwe.com
SHANE G. SMITH (272630)
sgsmith@mwe.com
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
Telephone:   (650) 815-7400
Facsimile:    (650) 815-7401

MCDERMOTT WILL & EMERY LLP
DEREK J. MEYER (278346)
dmeyer@mwe.com
JASON D. STRABO (246426)
jstrabo@mwe.com
2049 Century Park East, Suite 3800
Los Angeles, CA  90067
Telephone:   (310) 277-4110
Facsimile:    (310) 277-4730

MCDERMOTT WILL & EMERY LLP
JOHN C. LOW (*pro hac vice*)
jlow@mwe.com
1000 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone:   (713) 653-1781
Facsimile:    (713) 739-7592

*Attorneys for Isis Pharmaceuticals, Inc.*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

| | |
|---|---|
| ISIS PHARMACEUTICALS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SANTARIS PHARMA A/S CORP., a Delaware corporation, and SANTARIS PHARMA A/S, a Danish Corporation,<br><br>Defendants. | NO.  11CV2214 GPC (KSC)<br><br>**RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE CRAWFORD'S JULY 5, 2013 ORDER DETERMINING DISPUTE RE: DR. DEAN** |
| AND RELATED COUNTERCLAIMS | |

*PUBLIC VERSION*

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF RELEVANT FACTS | 2 |
| | A. The Antisense Field | 2 |
| | B. Experts | 3 |
| |    1. Nicholas M. Dean, Ph.D | 3 |
| |    2. Robert D. Brown, Ph.D | 8 |
| | C. The Order | 9 |
| III. | ARGUMENT | 12 |
| | A. Standard of Review | 12 |
| | B. Response to Objection 1: Santaris Misstates The Terms of the Protective Order | 12 |
| | C. Response to Objection 2: Judge Crawford had the authority to Strike The Definition of "Independent Expert" from the Amended Protective Order | 15 |
| | D. Response to Objection 3: The Order Is Correctly Decided On The Issue of Prejudice | 20 |
| | E. Response to Objection 4: Judge Crawford's Finding of "A Modest Risk of Inadvertent Disclosure" Was Not Clearly Erroneous | 23 |
| IV. | CONCLUSION | 24 |

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

**Page**

CASES

*Ares-Serono, Inc. v. Organon Int'l B. V.*
  153 F.R.D. 4 (D. Mass. 1993) ............................................................................ 5, 19

*Beckman Indus., Inc. v. Int'l Ins. Co.*
  966 F.2d 470 (9th Cir. 1992) ................................................................................... 14

*Brown Bag Software v. Symantec Corp.*
  960 F.2d 1465 (9th Cir. 1992) ........................................................................ passim

*Central Valley Chrysler-Jeep v. Witherspoon*
  2006 U.S. Dist. LEXIS 63282 (E.D. Cal. 2006) ......................................... 12, 22

*Grimes v. City and County of San Francisco*
  951 F.2d 236 (9th Cir. 1991) ................................................................................... 12

*McFarlane v. Life Insurance Company of North America*
  999 F.2d 266 (7th Cir. 1993) ................................................................................... 12

*Santella v. Grizzly Industries, Inc.*
  2012 U.S. Dist. LEXIS 158349 (D. Or. Nov. 15, 2012) ............................ passim

*Symantec Corp. v. Acronis Corp.*
  No. 11-5310 EMC (JSC), 2012 WL 3582974 (Aug. 20, 2012 N.D. Cal.) ..... 19, 20

STATUTES

28 U.S.C. § 636(b)(1)(A) ............................................................................................ 12

35 U.S.C. § 271(e)(1) .................................................................................................... 1

RULES

Fed. R. Civ. P. 26(c)(1)(G) ................................................................................ 10, 14, 15

Fed. R. Civ. P. 72(a) .................................................................................................... 12

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McDermott Will & Emery LLP
ATTORNEYS AT LAW
MENLO PARK

## I. INTRODUCTION

The testimony of an expert with experience in antisense drug discovery and development is critical to Plaintiff Isis Pharmaceutical, Inc.'s ("Isis") response to Defendants Santaris Pharma A/S and Santaris Pharma Corp.'s (collectively, "Santaris") defense that their activities are all exempted from infringement by the safe harbor set forth in 35 U.S.C. § 271(e)(1) (the "Safe Harbor"). Isis has retained Dr. Nicholas Dean for that purpose and Judge Crawford entered a July 5, 2013 order (Dkt. No. 172) (the "Order") granting Dr. Dean access to information Santaris has designated as Confidential or Confidential Attorneys Eyes Only in light of the substantial prejudice to Isis absent such relief. Santaris's objections to the Order should be rejected.

Santaris's objections contain eleven pages of argument. Over half of that argument is devoted to the contention that the Order "vitiates Santaris's rights under the protective order to make reasonable objections to disclosure of its Confidential Information." Nowhere in this fulsome argument does Santaris address a simple point: it has not quoted the entirety of Paragraph 8 of the Amended Protective Order upon which it relies to make this argument. Moreover, it does not disclose to the Court that it cherry-picked the portions of Paragraph 8 that suit its "argument" while omitting a key provision in Paragraph 8 that it cited below before Judge Crawford.

Santaris's "quotation" of Paragraph 8 of the Amended Protective Order at page 3 of its objections conveniently deleted, among other things, the following sentence: "The right of any Independent Expert to receive any Confidential Information will be subject to the advance approval of such expert by the producing party *or as approved by the Court*." (Dkt. 144, ¶ 8.) (emphasis added). The original Protective Order likewise stated: "The right of any independent expert to receive any Confidential Information will be subject to the advance approval of such expert by the producing party or as approved by the Court." (Dkt. No. 59, ¶8.)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1    Thus, each party knew at all times that the Court could enter an order granting an

2    opposing expert access to its Confidential Information.  In fact, they stipulated to

3    this in the original Protective Order.

4        Santaris's decision to omit in its objections to this Court any reference to the

5    "Court approval" language in the Protective Orders was deliberate, as shown by the

6    fact that it quoted this sentence before Judge Crawford repeatedly and did not,

7    unlike now before this Court, omit this sentence.  (*See* Dkt. 113, at 9, 33.)  Isis

8    likewise quoted this same sentence before Judge Crawford.  (*Id.*, p. 14.)

9        Santaris's remaining objections are equally baseless, and Isis asks that the

10   Court expeditiously reject Santaris's objections.  The proceedings on this issue

11   before Judge Crawford were extensive.  The parties spent over eight months first

12   meeting and conferring and then presenting their dispute regarding Dr. Dean to

13   Judge Crawford.  This included the filing of two separate joint motions totaling

14   over 95 pages, the submission of 12 declarations, over 88 exhibits, a lengthy

15   hearing before Judge Crawford in May 2013, and two orders culminating in the

16   Order on July 5, 2013.  On this record, Santaris's objections do not come close to

17   showing that Judge Crawford's findings of fact were clearly erroneous or that her

18   legal conclusions were contrary to law.

19   **II.    SUMMARY OF RELEVANT FACTS**

20        **A.    THE ANTISENSE FIELD**

21        The antisense drug discovery field is a small, close-knit field.  (Dkt. No. 113-

22   16 ¶ 19.)   Founded in 1984, Isis is among the earliest and most important

23   innovators in the antisense drug discovery field.  (*Id.*)  Only two antisense drug

24   products have ever been approved by the Food and Drug Administration ("FDA").

25   (Dkt. No. 113-1 ¶¶ 18, 20.)  Both were discovered by Isis.  (*Id.*)  As a result, many

26   of the consultants or scientists with experience in antisense drug discovery and

27   development have current or former affiliations with Isis.  (Dkt. No. 113-16 ¶ 19.)

28

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

Many consultants or scientists who provide services to companies in the antisense field provide services to multiple, often competing, companies in the industry. (*Id.*)

**B. EXPERTS**

**1. Nicholas M. Dean, Ph.D.**

Dr. Dean is one of the only individuals who both is not currently an employee of an antisense drug discovery company and has extensive experience in antisense drug discovery and development. (Dkt. No. 113-1 ¶ 20.) Dr. Dean has a Ph.D. in Pharmacology, and has authored over ninety peer-reviewed articles, reviews and book chapters related to antisense technology. (Dkt. No. 113-16 ¶ 9.) He is an inventor on more than 40 issued U.S. Patents related to antisense technology, and has secured over $500,000 in funding for antisense research from public sources, including from the National Institutes of Health, UC BioStar, and from the California Breast Cancer Program. (*Id.* ¶ 9.)

Dr. Dean's drug discovery and development career spans over 30 years, with 14 of those years spent as an employee of Isis. (Dkt. No. 113-16 ¶¶ 8-10; Dkt. No. 113-17 ¶ 2.) The remaining 16 years were at other companies. (*Id.*) Dr. Dean left Isis in January 2006, when he was laid off by Isis as part of a reduction in force. (*Id.*) Dr. Dean does not currently have a business relationship with Isis or any of its employees, nor is he a competitive decision-maker for Isis. (*Id.*; Dkt. No. 113-17 ¶ 3.)[1]

After leaving Isis, Dr. Dean founded Excaliard Pharmaceuticals, Inc. ("Excaliard"), a company devoted to the development of antisense therapeutics targeted to skin scarring and fibrosis. Dr. Dean served as Excaliard's Founder, Chief Scientific Officer, and a Member of Excaliard's Board. (Dkt. No. 113-16 ¶ 3.) Dr. Dean's employment with Excaliard terminated in February 2012, shortly after it was acquired by Pfizer, Inc. ("Pfizer"). (*Id.*) Dr. Dean consulted for Pfizer

---

[1] Dr. Dean occasionally socializes with one Isis employee, Frank C. Bennett, Ph.D, but does not otherwise socialize with Isis. (Dkt. No. 149-1, Ex. 17.)

on transition matters for approximately six months after the end of his employment. (*Id.* ¶ 4.) Dr. Dean has not entered into any subsequent consulting agreements with Pfizer, nor has he performed any consulting services for Pfizer since his consulting agreement expired in August 2012. (*Id.*) Dr. Dean, whose consulting activities are discussed in more detail, also serves as a consultant to several different companies. (*Id.* ¶ 3.)

Dr. Dean has been retained by Isis's counsel to provide expert opinions and information regarding the antisense drug discovery process as it relates generally to the subject matter of the claims of the patents at issue in this case. (Dkt. No. 113-16 ¶ 2.) Dr. Dean previously submitted a declaration on these topics in connection with Isis's opposition to Santaris's prior unsuccessful MSJ. (*Id.*; Dkt. No. 23.)

Dr. Dean has signed Exhibit A to the Protective Order entered in the case, agreeing to comply with and be bound by the terms of the Protective Order. (*Id.* ¶ 13, Ex. 2.) Dr. Dean has also specifically agreed that he would be bound by a patent prosecution bar. (*Id.*) In addition to the Protective Order, Dr. Dean has also agreed that in the event that he encounters documents or information produced by Santaris relating to non-public Santaris targets that are under consideration by any of his clients, he will immediately cease review of such documents pending Santaris approval or further order of the Court and will discontinue consulting with respect to such targets. (*Id.* ¶ 20; Dkt. No. 113-¶ 5.)

Dr. Dean has a long track record of protecting proprietary and confidential information, spanning over 30 years of drug discovery and development work, and has never been accused of violating any confidentiality obligation. (Dkt. No. 113-16 ¶ 12.) Apart from the fact that any violation of the Protective Order would potentially subject Dr. Dean to serious penalty, any such violation would ruin his reputation in the closely-knit antisense field, in which the ability to preserve confidential information is required to remain a member in good standing of the field. (*Id.* ¶ 13.)

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

Turning to Isis and Dr. Dean, Santaris's continued reliance on the former relationship between Isis and Dr. Dean only serves to highlight that its objections lack merit. *See Ares-Serono, Inc. v. Organon Int'l B. V.,* 153 F.R.D. 4, 6 (D. Mass. 1993) (finding expert independent where "[s]ignificantly, Carter no longer occupies a position at Serono. In the past…she was actively involved in decisions connected with securing regulatory approval for fertility drugs, according to defendants' representation. The extent of Carter's employment and association with Serono in the past is therefore considerable. The extent of her present involvement, however, is minimal.") Dr. Dean's employment with Isis terminated 7 years ago and as noted he does not have a business relationship with Isis. (Dkt. 113-16 ¶ 8.)

Santaris has sought throughout the process to grapple with this lack of a direct relationship by linking Dr. Dean and Isis through Excaliard. These attempts by Santaris to forge an indirect link are no better founded. Dr. Dean has not been employed by Excaliard since March 2012, and although he continued to provide limited consulting assistance to Pfizer related to Pfizer's acquisition of Excaliard, his consulting work ended by August 2012. (Dkt No. 113-16 ¶¶ 3-4.)

Nor did Isis's relationship to Excaliard contain the deep technical and financial ties that Santaris continues to erroneously suggest. The two companies' technical relationship has been dead for over 4 years. Excaliard did retain Isis to perform screening services with respect to potential antisense drug candidates identified by Excaliard from December 2007 through mid-2008. (Dkt No. 113-16 at ¶ 5.) After mid-2008, those technical services terminated. (*Id.*) Isis's only technical involvement from that point in time through Excaliard's November 2011 acquisition by Pfizer was a single technical briefing provided to Isis every six months. (*Id.*) The financial relationship between Isis and Excaliard was that of a minority equity holder with a small equity interest. (Dkt No. 113-16 at ¶ 6.) Isis's interest totaled 5% of Excaliard's shares. (*Id.*) Isis had no control over any of Excaliard's operations. (*Id.*) No Isis representative held a seat on Excaliard's

- 5 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   Board of Directors, nor did Isis have any decision-making authority within

2   Excaliard.  (*Id.*)

3       Santaris argues that there is cause for concern founded in Isis's passive right

4   to receive residual payments from Pfizer relating to Excaliard.  (Objection, pp. 8-9.)

5   Aside from its idle speculation, Santaris offers no real explanation as to how the

6   right to passively receive residual payments somehow gives rise to an active

7   confidentiality concern.  (*Id.*)  Nor is there any.  The right to the passive receipt of

8   payments simply does not equate to the likely transfer of information.

9       With respect to consulting,



DM_US 43710044-1.058823.0336

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

**2.     Robert D. Brown, Ph.D.**

Santaris claims that there are numerous available alternative experts. (Objection, pp. 14-15.)  Santaris's own expert designations, however, demonstrate the contrary.  (Dkt. No. 113-1 ¶ 19, Ex. 13.)  Santaris has disclosed that it intends to proffer testimony from Robert D. Brown, Ph.D. ("Dr. Brown").  (Dkt. No. 113-1 ¶ 19, Ex. 13.)   Dr. Brown touts himself as "one of the only R&D executives in the biotechnology industry to follow a systemically administered oligonucleotide therapeutic (Genasense™) from the research bench through Phase 1, 2 and 3 clinical trials and NDA review."  (*Id.* at Ex. 14, p. 99.)   This experience is apparently of significant importance to Santaris, who has identified Dr. Brown as one of only two third party experts from whom it ultimately intends to submit testimony.  (Dkt. No 149-1, ¶ 16, Ex. 10; Disc. Hr. Tr. at 26:18-22 (Santaris Counsel Fred Brown at the May 6 hearing: "It's most likely we are only going to use Dr. Brown and Dr. [Ohlstein].")

Santaris intends to rely upon and disclose "Confidential Information" to Dr. Brown despite the fact that he is a "competitive decision maker."  Dr. Brown serves as the Chief Scientific Officer and head of Research and Development for Dicerna Pharmaceuticals, Inc. ("Dicerna").  (Dkt. No. 149-1 ¶ 16, Ex. 10.)

---
[4]

"

"

Apparently unable itself to locate an unaffiliated third party expert with sufficient experience in antisense drug discovery and development, Santaris has nevertheless elected to disclose to Dr. Brown "Confidential Information," and utilize him as an expert in this case.[5]

As a Dicerna officer, Dr. Brown is in a position to directly influence a core business model that sounds remarkably similar to that of Isis and Santaris: "Strategic alliances are an integral part of Dicerna's corporate strategy. The company is committed to collaborating with partners who have a shared passion for realizing the significant potential of [RNAi] therapeutics for disease areas with high unmet medical need." (Dkt. No. 149-1, ¶ 21, Ex. 14.) That Santaris would choose to work with Dr. Brown is at odds with its litigation concern that even "the identity of the RNA targets that Santaris is pursuing" stands among its most sensitive information.

### C. THE ORDER

In the Order at issue, which is further described below, Judge Crawford noted

---

[5] Isis has objected to Dr. Brown noting that while it disagrees with the standards Santaris has attempted to impose with respect to Dr. Dean, that until the objections to Dr. Dean are fully resolved "Isis is applying the same standards to Dr. Brown as a matter of fairness and to ensure that the same legal standards are to apply to each party. Once the Court rules on Santaris's position with respect to Dr. Dean, Isis will reevaluate its position with respect to Dr. Dean." (Dkt. No. 175-4, Ex. 17.)

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

that the Protective Order provides that the approval of independent experts shall not be unreasonably withheld. (Dkt. No. 172, p. 2.) She further noted that the Court is empowered under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure to control whether or how certain confidential information is revealed during the course of discovery. (*Id.*, p. 4.) Both the original Protective Order and the Amended Protective Order specifically cite this same rule. (Dkt. No. 59, p. 1; Dkt. No 144, p. 1.)

Judge Crawford concluded, among other things, that Dr. Dean does consult for some Santaris competitors, either directly or indirectly. (Dkt. No. 172, pp. 7-9.) Judge Crawford went on, however, to make clear that under *Brown Bag* and *Santella*, "[a] competitive relationship alone…is not sufficient to find that [a proposed expert] will inadvertently disclose [the producing party's] confidential information." (*Id.* p. 9 (*citing Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) and *Santella v. Grizzly Industries, Inc.*, 2012 U.S. Dist. LEXIS 158349 (D. Or. Nov. 15, 2012)).

As part of this inquiry, Judge Crawford made the factual finding that Dr. Dean nevertheless posed a "relatively minor" or "modest risk" of inadvertent disclosure. She found that Dr. Dean is "not a traditional 'competitive decision maker'," but "[g]iven Dr. Dean's status as an active consultant in the field, the narrow scope of his consulting work, and the nature of the information at issue (the identities of gene targets, when there are 'tens of thousands of gene from which to choose), the Court finds there to be some potential risk of inadvertent disclosure of defendants' confidential information." (*Id.*, p. 11.)

Judge Crawford further found, however, that the risk of inadvertent disclosure was minimal, noting "[g]iven Dr. Dean's agreement to be bound by the Amended Protective Order entered in this case, and the patent prosecution bar included therein, and his assurance that he would discontinue a consultancy if it triggered a conflict with something derived from defendants' confidential

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

information in this case, there is a relatively minor risk" that Dr. Dean's "future decisions may be made in partial reliance on that information." (*Id.*, p. 11.) She also concluded that "the modest risk of inadvertent disclosure of defendants' confidential information within this admittedly small field does not justify defendants' demand that Dr. Dean be precluded from serving as an expert witness in this case." (*Id.*)

Judge Crawford then assessed the second part of the *Brown Bag* equation, weighing against the minimal risk the prejudice to Isis from denying Dr. Dean access. (*Id.* pp. 11-13.) Quoting Judge Moskowitz's order on Santaris's first MSJ, Judge Crawford concluded that "it is essential for plaintiff to have an antisense expert qualified to testify regarding the process of drug development and discovery." (*Id.*, pp. 12-13.) She went on to reach the factual conclusion that "[w]ith only two products approved by the FDA in the antisense industry's more than 20 year history, the pool of experts qualified to testify regarding drug discovery and development is a small one." (*Id.*, p. 13.)

Judge Crawford then specifically referenced Santaris's retention of Dr. Brown, noting that Santaris's "selection of a senior-management level executive of a competitor and voluntary disclosure of its own confidential information to him underscores the limited number of experts in this small field qualified to serve as expert witnesses." (*Id.*) Thus, Judge Crawford concluded "[b]ased on the small size and highly specialized nature of the antisense industry, especially in light of defendants' choice of a direct competitor as its own expert, denying Dr. Dean access to defendants' confidential information would unreasonably limit and impair plaintiff's ability to prosecute its case at trial and defend itself against defendants' anticipated renewed MSJ." (*Id.*)

Given the high risk of prejudice to Isis and the "relatively minor" or "modest" risks to Santaris, Judge Crawford ordered that Dr. Dean be granted access to Santaris "Confidential Information." (*Id.*, p. 14.)

## III. ARGUMENT

### A. STANDARD OF REVIEW

A party may file objections to a non-dispositive pretrial order issued by a magistrate judge within 14 days after being served with a copy of the order. Fed. R. Civ. P. 72(a). The magistrate judge's disposition may set aside only if it is "clearly erroneous" or "contrary to law." *Id.*; 28 U.S.C. § 636(b)(1)(A). Factual findings inherent in discovery disputes are among the non-dispositive pretrial matters that are reviewed under the "clearly erroneous" standard. *See Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) (holding that discovery sanctions are non-dispositive pretrial matters that are reviewed for clear error under Rule 72(a)). Legal conclusions are reviewed de novo to determine whether they are contrary to law. *Central Valley Chrysler-Jeep v. Witherspoon*, 2006 U.S. Dist. LEXIS 63282, at *8 (E.D. Cal. 2006).[6]

The "clearly erroneous" standard is "'significantly deferential, requiring a "definite and firm conviction that a mistake has been committed.'"" *Id.* at *7.

### B. RESPONSE TO OBJECTION 1: SANTARIS MISSTATES THE TERMS OF THE PROTECTIVE ORDER

For its first objection, Santaris argues that (1) "each party agreed that there would be just one limitation on a producing party's right to object to a proposed disclosure to a particular expert: a party's approval must not be 'unreasonably withheld"; and (2) the Order "never finds that Santaris's objection to Dr. Dean is unreasonable, and indeed writes this protection out of the protective order." (Objection, p. 6).

---

[6] *See also McFarlane v. Life Insurance Company of North America*, 999 F.2d 266, 267 (7th Cir. 1993) (Where the issue presented does not concern "an unadulterated legal conclusion, but rather the application of a legal standard to a particular set of facts…the corresponding review is for clear error. Only if the [magistrate] judge misapprehends the governing rule of law does our review become more searching.").

McDermott Will & Emery LLP
ATTORNEYS AT LAW
MENLO PARK

This objection ignores that Judge Crawford specifically cited in her Order the language in the Protective Orders that approval of experts shall not be unreasonably withheld. Santaris's criticisms of Judge Crawford also ignore that the parties extensively briefed and argued the alleged "reasonable" objections Santaris outlines at pages 8 through 12 of its objections and Judge Crawford addressed those arguments. For example, her Order expressly addressed Dr. Dean's alleged ties to Isis both before and after Isis laid him off in 2006 and to Excaliard, as well as the issue of whether Dr. Dean consults for Santaris's competitors. (Dkt. No. 172, pp. 5-6, 7-9.) In her May 17, 2013 Order, Judge Crawford also addressed Santaris's complaint that Dr. Dean had not sufficiently disclosed his consulting relationships[7] and ordered Isis to disclose the names of all companies for which Dr. Dean currently consults, or has consulted within the last four years, as well as the time period(s) for each and a brief description of the subject matter of each consultancy. (Dkt. No. 140, pp. 6-7.) Under these circumstances, any suggestion to the effect that the Court did not consider Santaris's objections is false.

Santaris's objections also ignore that the Protective Orders both contain express language that the Court could enter an order granting an opposing expert access to its Confidential Information. In fact, they stipulated to this in the original Protective Order. Indeed, Santaris cited this language to Judge Crawford multiple times below before deciding for whatever reason not to cite this portion of Paragraph 8 of the Protective Order before this Court. (*See* Dkt. 113, at 9, 33.) It

---

[7] Dr. Dean did not initially disclose the identities of his consulting clients or the subject matter of such consultancies because he is bound by, and desired to honor, the terms of his NDAs. (Dkt. No. 113-16 ¶ 14.) After Judge Crawford ordered that he was to disclose basic information, subject to clear protections for such disclosure, he complied with that order. Santaris makes much of the fact that certain of the companies for whom Dr. Dean consults had apparently issued some public statements acknowledging his retention to provide them with consulting services. What that argument misses is that such information is his client's information, and it is the client's right to determine what or how much to disclose. Dr. Dean simply selected the most conservative path to protect his obligations of confidentiality.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

also ignores that the parties' reference to Rule 26(c)(1)(G) in the Protective Orders and the Court's citation to this rule in her Order.

The original Protective Order, which was in place when Santaris produced its 1.4 million pages of documents, was not a contract.[8]  It was a stipulated protective order subject to the Court's approval of the order.  Nothing in the parties' stipulated Protective Order stated that the Court could not approve the disclosure of confidential information over a party's objections, regardless of whether they were reasonable or not.  Nor did the order provide that a party was barred from seeking Court approval over the other party's objections.

Nor did anything in the Protective Order bar the Court from applying Rule 26(c)(1)(G) or *Brown Bag* and it progeny when presented with a request to approve the disclosure of confidential information to an expert.  The same hold true for the Amended Protective Order.   As the *Santella* court recently explained in assessing whether an expert should be granted access to confidential materials, under the *Brown Bag* test, the court must balance the risk of disclosure to competitors against the risk of damaging the claims or defenses of the party seeking access.  2012 U.S. Dist. LEXIS 158349, at *4.  The court must take into account "factually all the risks and safeguards surrounding inadvertent disclosure" before granting or denying access to confidential information.  *Id.*  Judge Crawford carefully evaluated both the risk of harm, including all of the risks and safeguards, and extensively analyzed the risk to Isis of damaging its claims or defenses, thus correctly applying the

---

[8] Santaris did not assert its reliance cases before Judge Crawford.  For example, the authorities cited in footnote 2 are new, as is the citation to *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) at the bottom of page 7.  Moreover, Santaris's argument in footnote 2 that Judge Crawford erred in stating that it is Santaris's burden to show "good cause" to extend the Protective Order's protections is belied by the case law.  Santella, 2012 U.S. Dist. LEXIS 158349, at *4 (internal quotations omitted) (stating, in evaluating request for expert access, "the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material").  Moreover, to the extent that Santaris is claiming it relied on the Protective Order, the Protective Orders expressly stated that the court could grant approval to one party's expert to review the confidential information of another party.

*Brown Bag* test.[9]

Isis does not dispute that the original Protective Order allowed for the assertion of objections by the producing party to an "independent expert," providing that "[t]he approval of independent experts must not be unreasonably withheld." (Dkt. No. 59, ¶ 8.) The original Protective Order articulated no similar standard with respect to when an expert may be granted access by order of the Court, instead remaining silent on the subject. (*Id.* ¶¶ 1-28.)

In sum, the plain language of Paragraph 8 of the Protective Order, which Santaris deliberately omitted from its brief, put all parties on notice that the Court could approve the disclosure of a party's confidential information. Nothing in the Protective Order precluded the granting of such approval over a party's objection, and that is consistent with Rule 26(c)(1)(G). For these reasons, the Court should reject Santaris's first objection.

**C.    RESPONSE TO OBJECTION 2: JUDGE CRAWFORD HAD THE AUTHORITY TO STRIKE THE DEFINITION OF "INDEPENDENT EXPERT" FROM THE AMENDED PROTECTIVE ORDER**

As its second objection, Santaris claims that Judge Crawford erred when she struck the definition of "Independent Experts" added by Santaris to the Amended Protective Order. (Objection, pp. 12-13.) At the outset, it should be noted that Santaris agreed to the original Protective Order, which did not include the definition of "Independent Expert" which Santaris now argues is indispensable. The revised order was instead the result of Judge Crawford's May 17th Order that Dr. Dean must disclose his consulting relationships.

Specifically, on October 25, 2012, Judge Crawford entered the original

---

[9] In the parties' March 8, 2013 joint motion relating to Dr. Dean, Santaris cited the Ninth Circuit Court of Appeals' decision in *Brown Bag* for the proposition that "[i]n determining whether a protective order limiting disclosure to certain individuals is warranted, the Ninth Circuit balances the risks that the producing party faces from inadvertent disclosure against the risk that the disclosure limitation would impair the receiving party's prosecution of the lawsuit." (Dkt. No. 113, p. 40.) Santaris cited extensively to *Brown Bag* and *Santella*.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

Protective Order (Dkt. No. 59). The original Protective Order was based upon the then-existing model protective order that had been adopted in this District, and was entered upon agreed joint motion by the parties. (*See* Dkt. Nos. 58, 59.) As noted, the Original Protective Order provided that "[t]he right of any independent expert [to view 'Confidential Information'] will be subject to the advance approval of such expert by the producing party *or by order of the Court*." (Dkt. No. 59 at ¶ 8.) (emphasis added). The original Protective Order did not set forth a definition of the phrase "independent expert." (*See Id.* ¶¶ 1-28.)

Under the original Protective Order, "[t]he party seeking approval of an independent expert must provide the producing party with the name and curriculum vitae of the proposed independent expert must provide the producing party with the name and *curriculum vitae* of the proposed independent expert, and an executed copy of the form attached hereto as Exhibit A…" (Dkt. No. 59, ¶ 8.) These were the only pieces of information required to be disclosed by the original Protective Order. (*Id.* ¶¶ 1-28.)

On March 8, 2013, the parties filed a joint motion for determination by Judge Crawford of their dispute with respect to Dr. Dean (Dkt. No. 113) (the "March 8[th] Motion"). On May 6, 2013, the Court held a hearing on the Joint Motion. (Dkt. No. 134). The hearing was extensive, involving extensive argument from both Isis and Santaris. (Dkt. No. 136.) On May 17, 2013, Judge Crawford issued an order requiring Isis to disclose the names of the companies for which Dr. Dean "currently consults" and for which he had consulted in the previous four years, as well as the time periods for each and a brief description of the nature and subject matter of each consultancy, citing Paragraph 12 of the S.D Cal. Form Protective Order. (Dkt. No. 140, pp.5-6.) The Court also ordered the parties to jointly submit for the Court's signature "an Amended Protective Order, already signed by the parties, revising the Protective Order already entered in this case…by including Paragraph 12 from the Southern District's Model Protective Order for patent cases, which is

appended to the Southern District's Local Patent Rules…" (*Id.*, p. 6.) The Court's May 17th Order did not refer to any other additions or revisions of the then-existing Protective Order. (*Id.*) It likewise made no reference to the addition of any definition of the term "Independent Expert." (*Id.*)

On May 21, 2013, Santaris's counsel forwarded a draft of an Amended Protective Order. (Declaration of Derek Meyer ("Meyer Decl.") ¶ 2.) The cover email from Santaris's counsel characterized the changes, noting "So you can follow what we have done: we took the Word version of the previous order as submitted to the Court, and replaced paragraph 8 with paragraphs 12 and 5 (each slightly modified) of Court's standard order. We also slightly modified the definition of counsel in the order previously submitted to the Court." (*Id.*) The changes incorporated the Paragraph 12 as ordered, and also incorporated the definition of "Independent Expert" from Paragraph 5 of the form order into the revised Paragraph 8. (*Id.* ¶ 3, Ex. 1.) Isis was not stipulating to this language in the classic sense of a stipulation but was instead trying to follow the Court's order to incorporate Paragraph 12 from the form order, although it learned in the Order that the parties had misconstrued the scope of the Court's intent. (*Id.* ¶ 3.)[10]

On May 31, 2013, the parties filed a joint motion for entry of the Amended Protective Order. (Dkt. No. 143.) The Amended Protective Order was entered by the Court on June 3, 2013. (Dkt. No. 144). Per the May 17th Order, the Amended Protective Order included the language from Paragraph 12 from the Southern District's current Model Protective Order governing information to be disclosed by consultants retained as experts before receiving access to "Confidential Information." (*Id.* ¶ 8.) It also included the definition of "Independent Expert" not

---

[10] On May 22, 2013, Isis's counsel emailed Santaris' counsel with minor comments on the proposed amended protective order. The comments included language indicating that the parties had agreed on the terms of the Protective Order, which was true for the original Protective Order, or that the parties had otherwise been ordered to be bound by the terms of the Amended Protective Order as set forth in Judge Crawford's May 17, 2013 order. (Meyer Decl., ¶ 4, Ex. 2.)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   referenced in Judge Crawford's May 17th Order.  (*Id.*)  At the same time, the

2   Amended Protective Order continued to include the provisions from the Original

3   Protective Order, prohibiting the parties from making changes to the Protective

4   Order without leave of Court and expressly permitting Judge Crawford to modify

5   the Amended Protective Order "in the interests of justice or for public policy

6   reasons." (Dkt. No. 144 ¶¶ 27, 28.)

7           On June 10, 2013, the parties filed a second joint motion (Dkt. No. 149) (the

8   "Second Joint Motion").  On July 5, 2013, Judge Crawford issued the Order at

9   issue.  In the Order, Judge Crawford noted that the parties "tacked on onto the

10  Court-ordered clause was an additional sentence purporting to define the term

11  'Independent Expert.'" (Dkt. No. 172, p. 4.)  She went on to note that "when the

12  Amended Protective Order was submitted to the Court, the parties failed to disclose

13  that changes had been made beyond the one amendment specifically ordered." (*Id.*,

14  p. 4.)  She then went on to strike the tacked-on definition, referencing her powers to

15  modify the Protective Order "in the interests of justice of for public policy reasons."

16  (*Id.*, p. 4, fn. 2.)  She left intact, however, Paragraph 12 of the form's orders

17  disclosure requirements as required by her May 17th Order.

18          Santaris is therefore arguing that the Court had the authority to compel the

19  parties to amend the Protective Order but lacked the authority to correct the parties'

20  (or at least Isis's) misunderstanding as to how the order was to be amended as

21  ordered by Judge Crawford.   This argument ignores that the parties originally

22  stipulated in the original Protective Order and the Amended Protective Order that

23  the Court could amend its orders.  (Dkt. No. 59, p.5:6-8, Dkt. No. 144, p.5:22-24.)

24  It also ignores the Court's powers under Rule 26(c)(1)(G), as reflected in the Order.

25          Santaris's argument that the definition of "Independent Expert" is necessary

26  for Paragraph 12 of the Protective Order to properly function is untrue.   The

27  original Protective Order, which was modeled on the then-existing form protective

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

order, contained no such definition.[11] The fact that the first letter of each of the words is now capitalized does not then somehow render Paragraph 12 unworkable without the new definition of "Independent Experts" in Paragraph 5 of the form protective order.

Moreover, the application of that definition would, under the facts and circumstances of this case, be inconsistent with established Ninth Circuit law. Courts in the Ninth Circuit have repeatedly espoused the *Brown Bag* balancing test applied by Judge Crawford in determining whether individuals such as Dr. Dean may appropriately access confidential information. *See, e.g., Santella*, 2012 U.S. Dist. LEXIS 158349, at *4. The definition of "Independent Expert" that Santaris advocates, however, affords no consideration to whether the expert is also a "competitive decision maker," the other "risks and safeguards surrounding inadvertent disclosure," or the risk of damaging the claims and defenses of the parties seeking access. *Id.* at *16 ("A competitive relationship alone, however, is not sufficient to find that [a proposed expert] will inadvertently disclose [the producing party's] confidential information") (applying *Brown Bag*); *Brown Bag*, 960 F.2d at 1470. Yet, these issues must all be assessed under the Ninth Circuit's *Brown Bag* balancing approach. Thus, not only was Judge Crawford's decision to strike the definition of "Independent Expert" well within her authority, but it was also consistent with governing Ninth Circuit law.

Santaris's citation to *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2012 WL 3582974 (Aug. 20, 2012 N.D. Cal.), on this point is also misplaced. The court there denied confidential access to a proposed expert who actively consulted with competitors of the producing party. *Id.* at *3. The decision,

---

[11] Moreover, protective orders commonly contain no definition of independent expert, an issue with which courts have easily grappled by applying a developed body of case law briefed at length by the parties in their original Joint Motion. *Ares-Serono, Inc.,* 153 F.R.D. at 6 (articulating four factor test for determining whether expert was independent).

did not apply the *Brown Bag* balancing test, but instead applied a far more stringent standard requiring that the proffered expert "possess unique expertise" before permitting him confidential access. *Id.*

Judge Crawford correctly determined not to follow the nonbinding *Symantec* decision. First, the facts there limit its reach to "the very specific situation presented by" its proposed expert, namely, someone who actively consults with true competitors of the producing party. *Id.* at *12. Such is not the case with Dr. Dean. (*See* Section II.B.1, *supra*.) Moreover, the *Symantec* court found that the proffered expert lacked unique expertise. 2012 WL 3582974 at *11. Yet, Dr. Dean possesses uncommon knowledge of an antisense industry with which few individuals have actual discovery and development experience. (*See* Section II.A, *supra*.)

Moreover, *Symantec* was wrongly decided. By its analysis, the very credentials that qualify someone as an expert in the patented subject matter (*Symantec*, 2012 WL 3582974 at *2) become "on-going relationships with competitors in the field" of the producing party. *Id.* at *3. Those relationships are then disqualifying unless the expert has "unique expertise." If a field has even two suitable experts, then parties will be *per se* unable to use their chosen expert. Surely that cannot be the law, and is contrary to *Brown Bag's* balancing requirement. Moreover, with all due respect to the *Symantec* Court, the decision appears unreliable as it states that it could find no case within the Ninth Circuit on the issue. *Id.* at *11 n.1. *Symantec* plainly did not consider either *Brown Bag* or *Santella*.

Accordingly, Judge Crawford's decision to strike the definition of "Independent Expert" from the Amended Protective Order did not constitute error.

## D. RESPONSE TO OBJECTION 3: THE ORDER IS CORRECTLY DECIDED ON THE ISSUE OF PREJUDICE

Santaris argues that Judge Crawford erred because her Order "fram[ed] the inquiry as whether Isis would be prejudiced if it lacked any antisense expert" and,

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

according to Santaris, Isis should just name a different expert. (Objection, pp.14-15).

Judge Crawford correctly framed the issue, and her factual findings that "denying Dr. Dean access to defendants' confidential information will unreasonably limit and impair plaintiff's ability to prosecute its case at trial and defend itself against defendants' anticipated renewed MSJ on the safe harbor issue" (Dkt. No. 172, at 13.)[12] were not clearly erroneous.

As Isis explained below, Isis and its counsel have engaged, without success, in extensive efforts to find an expert with comparable expertise to that of Dr. Dean. (Dkt. No 113-1 ¶ 18.) All of the other experts contacted or considered in that process: (i) had relationships with Isis or another competitor of Santaris; (ii) lacked experience as an employee of an antisense drug discovery company; or (iii) ultimately determined that they were unwilling to serve as an expert in this dispute. (Id.) Although Santaris superficially cites to the numbers returned by various inquiries as support for its claim that the world is replete with such individuals, it has never actually identified any expert from those lists who possesses similar experience in antisense drug discovery and development and does not have a potentially disqualifying relationship with an Isis competitor.[13]

---

[12] Judge Crawford also correctly recognized the prejudice from Isis in the form of the substantial time and expense that it has devoted to Dr. Dean, with whom its counsel worked extensively in connection with Santaris's first MSJ.
[13] A basic review of Santaris's supposedly probative lists undercuts its claim that these lists are broadly replete with such experts. For example, Santaris's assertion that a search on Westlaw for antisense or oligonucleotide yields over 500 "results" is highly misleading. (Objection, p. 15.) A high proportion of those results are simply duplicate references to the same purported experts, with numerous experts listed multiple times, including many that are listed 10 or more times. Of the actual unique experts contained within that list, the overwhelming majority appear to have been included by virtue of their publication of just one or two passing articles regarding a single experiment or series of experiments utilizing antisense oligonucleotides. Many of those articles are extremely dated, and thus do not reflect current expertise necessary to evaluate Santaris's Safe Harbor affirmative defense.. The remainder either lacked sufficient practical experience or appear to have relationships with "competitors" that would be deemed disqualifying under the standards urged by Santaris. (Dkt. No. 149, p. 17.)

1      Judge Crawford was also mindful of Santaris's own conduct, of which she

2 rightfully took note in her Order. Santaris clearly viewed Dr. Brown's drug

3 discovery and development experience as important, given that Santaris has

4 retained him as one of the only two external experts who remained on its list when

5 Santaris subsequently pared it down. (Disc. Hr. Tr. at 26:18-22.) As the Chief

6 Scientific Officer of Dicerna, he undoubtedly would qualify as a "competitive

7 decision maker" under the *Brown Bag* test.

12      Santaris also ignores Judge Crawford's factual finding that the "pool of

13 experts qualified to testify to the process of drug discovery and development is a

14 small one" and that Santaris's choice of Dr. Brown "further bolsters this

15 conclusion." (Dkt. No. 172, p. 13.) These factual findings are also subject to great

16 deference by this Court. *See Central Valley*, 2006 U.S. Dist. LEXIS 63282, at *7.

17      Finally, Santaris trots out again the argument that Isis already has two

18 experts. (Objection, p. 15.) Santaris made this same argument to this Court on

19 June 20, 2013 in connection with the parties' dispute over whether the briefing

20 schedule on the renewed summary judgment motion should be amended because at

21 the time the issues relating to Dr. Dean had not been ruled on by Judge Crawford.

22 (Dkt. 168, p. 4.) As Isis has explained, in addition to Dr. Dean, Isis's attorneys

23 have also retained two other experts, Elizabeth Gordon, Ph.D., and Claire Gelfman,

24 Ph.D. (Dkt. No. 113-1 ¶ 2.) Both experts fill different roles than Dr. Dean. Dr.

25 Gordon is a former FDA official who regularly consults on regulatory issues. (Dkt.

26 No. 113-18 ¶¶ 2, 12-16.) Dr. Gordon has been retained to provide opinions and

27 information regarding the process by which FDA considers investigational new

28 drugs, and in particular, the scope and content of information submitted to FDA by

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

drug sponsors in an Investigational New Drug Application. (Dkt. No. 113-1 ¶ 2.) Dr. Gelfman has been retained by Isis's counsel as a technical consultant to assist in interpreting the large volume of scientific documents produced by Santaris in this matter. (*Id.* ¶ 4.) As Dr. Gelfman's curriculum vitae disclosed, she has a Ph.D. in Molecular Biology, but does not have experience in the antisense drug discovery issues that are the subject of Dr. Dean's anticipated opinions. (*Id.* ¶ 5, Ex. 3, pp. 25-28.)

This Court rejected Santaris's argument that Isis already has two experts on June 20, 2013, and specifically found that Isis would be prejudiced by having to brief Santaris's renewed motion for summary judgment "without the benefit of it's expert's contributions in less time than originally provided by this Court's briefing schedule." (Dkt. No. 170, p. 3.) For all of these reasons, Santaris's third objection to the Order should be rejected.

### E. RESPONSE TO OBJECTION 4: JUDGE CRAWFORD'S FINDING OF "A MODEST RISK OF INADVERTENT DISCLOSURE" WAS NOT CLEARLY ERRONEOUS

For its fourth objection, Santaris asserts that Judge Crawford erred because she erroneously relied upon Dr. Dean's "assurances that he would discontinue a consultancy if it triggered a conflict with something derived from defendants' confidential information" when making its factual finding that the "relatively minor risk" or "modest risk of inadvertent disclosure of defendants' confidential information within this admittedly small field does not justify defendant's demand that Dr. Dean be precluded from serving as an expert in this field." (Objection, pp. 15-16.)

Again, Santaris has not presented the full picture to the Court. Judge Crawford listed two other factors before this factor in her Order. (Dkt. No. 172, p. 13.) She first cited Dr. Dean's agreement to be bound by the terms of the Protective Order, and the patent prosecution bar cited therein, when making this finding. (*Id.*) These terms protect Santaris. Specifically, the Amended Protective

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

Order contains a patent prosecution bar, extending for a period of five years after the resolution of this matter, including any and all appeals. (Dkt. No. 144, ¶ 12.) By signing Exhibit A to the Protective Order, Dr. Dean also agreed under penalty of perjury to be bound by and comply with the Protective Order's terms. (*Id.*, pp. 15-16, ¶¶ 2, 3.)

As for the third factor she cited, Dr. Dean has agreed: "in the unlikely event that I come across a non-disclosed Santaris target that my other client is working on I will ceased reviewing the document and will refrain from any further consulting on that specific target. Because I will not have reviewed the information and will not review other documents on the target, the information would be of little value. I reiterate that in my 30 years of researching and working in the antisense field, I have never had an issue with maintaining one client's confidences when working for another client despite having far great access to information than I would have here where I would cease work on a target before I learned any details." (Dkt. No. 113-17, ¶ 5.) This is not materially different, particularly under the applicable "clearly erroneous" from how Judge Crawford characterized this agreement in her Order. Santaris's "odd carve-out" objection on this point assumes without basis that Dr. Dean would need to disclose the basis of his termination of work as opposed to simply ceasing his consultancy on the subject target without sharing any details relating to Santaris. Santaris's fourth objection should therefore be rejected.

## IV.  CONCLUSION

For the foregoing reasons, Isis respectfully requests that the Court affirm Judge Crawford's Order. Santaris cannot show that the Court's factual findings were clearly erroneous and if this Court were to somehow determine that Santaris's objections address pure legal issues, Santaris has failed to identify any portion of the order that is contrary to law. Moreover, Isis has been prejudiced by the prolonged delays relating to Dr. Dean's ability to review Santaris's confidential information in both the depositions that have already occurred in this case, as well

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

as in connection with Isis's preparations for Santaris's second motion for summary judgment.

Dated:  July 16, 2013                    MCDERMOTT WILL & EMERY LLP


By:     _/s/ William G. Gaede, III_
            William G. Gaede, III

Attorneys for _Isis Pharmaceuticals, Inc._

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

- 25 -